# CHARLESTON.

## HAINES *v.* COCHRAN BROS.

Submitted June 19, 1885.—Decided November 14, 1885.

(*JOHNSON, JUDGE, Absent.)

1. To maintain *trover* the plaintiff must show a conversion of personal property by the defendant, and that he had at the time of

*Related to some of the parties.

the conversion a general or special right of property in the thing converted and also the possession or a right to the immediate possession thereof.  (p. 723.)

2. In such action a conversion may be proved in three ways : *first,* by a tortious taking ; *second,* by any use or appropriation to the use of the defendant indicating a claim of right in opposition of that of the plaintiff or owner ; and *third,* by a refusal to deliver possession to the owner on demand.  (p. 723.)

3. When the action is by a buyer against the seller, and the contract is that the goods shall be paid for on delivery, the plaintiff can not maintain the action, if he fails to prove that he has paid the full price before the action is commenced.  (p. 725.)

4. But if the goods are delivered at the place appointed by the contract of sale, and the defendant claims to hold possession only until the purchase-money is paid, the plaintiff will be entitled to recover, if he proves on the trial that such claim of the defendant is unfounded, and that he had in fact paid the full price, before the action was commenced.  (p. 725.)

5. Where the plaintiff had two distinct and separate contracts for the delivery of staves at a specified place, to be paid for on delivery, and the plaintiff claims in his declaration the value of all the staves in both contracts, but the proof shows that he had paid for the staves delivered under one contract only, he may recover for the staves delivered under that contract, although he is not entitled to recover for the staves embraced in the other.  (p. 726.)

6. In this action the court properly instructed the jury, that if they believed from the evidence that the plaintiff had purchased and paid for the staves in the declaration mentioned, that the defendant delivered them to the plaintiff and afterwards came into possession of them without the consent of the plaintiff, the plaintiff was entitled to recover.  (p. 726.)

7. The giving of a trust-deed on the property sought to be recovered which requires the plaintiff to deliver the property to the trustee, does not take from the plaintiff the right to recover from a person not claiming under such deed.  (p. 727.)

The facts of the case are fully stated in the opinion of the Court.

*John A. Hutchinson* and *Dave D. Johnson* for plaintiff in error.

*W. P. Hubbard* and *H. M. Russell* for defendant in error.

SNYDER, JUDGE:

Writ of error to a judgment of the circuit court of Pleasants county rendered June 16, 1883, in an action of *trover* brought by Simpson Jones and Ralph Haines, partners as Jones & Haines against John, Park and Joseph Cochran, partners as Cochran Brothers, for the conversion of 80,000 oil barrel staves of the value of $2,000.00. There was a trial by jury and a verdict in favor of the plaintiffs for $699.35, on which the said judgment was rendered. The defendants' have brought this writ of error.

The plaintiffs read in evidence a written contract between themselves and the defendant, John Cochran, dated May 12, 1879, wherein they agreed to purchase from Cochran 100,000 staves, more or less, at $13.50 per thousand, to be delivered on the bank of the Ohio river by November 1, 1879, to be paid for as follows: $9.00 per thousand at the time of bucking the staves in the woods and the balance when delivered on the bank of the river by Cochran.

They then introduced evidence tending to prove that under said contract the defendants delivered on the bank of the Ohio river 117,000 staves, that of these staves they loaded on their barge and shipped to Pittsburgh in the fall of 1879, 81,500; that in January 1880, they made a second contract with John Cochran for 50,000 additional staves to be paid for as in the first contract; that this second contract was verbal and not in writing; that the said 81,500 staves were all that they got under both contracts; that at the time the second contract was made they paid on it $200.00, and accepted an order drawn by Cochran for $125.00; that they never settled for all the staves on both contracts, but had paid in full for the 117,000 on the first contract; that some of the staves on the second contract were delivered on the bank of the river and were ricked up separately from the other staves; that defendants sent a written notice to Robert Patterson, the attorney of the plaintiffs, and he went to the stave-yard on the river and the defendants then offered to deliver the balance of the staves due the plaintiffs, provided the balance due on them was paid and they showed him one or two large ricks of staves which they said belonged to the plaintiffs—this was in June, 1880; that at that time and place the staves were

worth $20.00 per thousand loaded on the barge and it would cost about thirty cents per thousand to load them on the barge.

The defendants introduced in evidence two trust-deeds given by the plaintiffs, the one dated February 9, 1877, and the other May 5, 1879, conveying real estate of the plaintiffs to secure two debts due from them of $921.00 and $600.00, respectively, and then offered evidence tending to prove that the plaintiffs were not in good credit and were in failing circumstances; also evidence tending to contradict that of the plaintiffs in many respects, especially in regard to the delivery of any staves other than those taken away in the barge by the plaintiffs and tending to prove that there never was any other than the written contract between the parties, and that the plaintiffs were indebted on that contract between $70.00 and $100.00, which they refused to pay; that they had the staves on the yard and told Patterson, the plaintiff's attorney, they would deliver them to the plaintiffs when the balance due on them was paid.

Robert Patterson, the attorney for the plaintiff, who had testified that he was acting as such at the time he received from the defendant the written notice hereinbefore referred to being re-called by the plaintiffs testified, that when he was down at the stave-yard in June, 1880, he demanded the difference between the 117,000 staves and what he understood the plaintiffs had taken to Pittsburg.

After the evidence had been closed the defendants asked the court to give to the jury seven instructions, numbered from one to seven. The court gave the second, third, fourth, fifth, and a portion of the first and refused to give the others, but in lieu of the defendants, seventh the court gave another instruction which may be designated as No. 8. To which several rulings of the court in giving the said instruction No. 8 and refusing to give Nos. 6 and 7, and No. 1 as asked, the defendants excepted.

The said first instruction as asked is as follows, the part refused being in italics:

"That the plaintiffs have no right to recover in this action unless they show that on the 25th day of June, 1880, (the time this suit was brought) they had the right of prop-

erty in the said 80,000 staves, or any part they may show themselves entitled to, and also had the right to the possession of said staves, or part thereof, according to the terms of the alleged contract between them and John Cochran, *and that the defendants did actually convert the specific staves claimed in this action by the plaintiffs to their own use after the plaintiffs had made a demand upon them within a reasonable time before this action was brought, otherwise the verdict must be for the defendants.*" And the defendants instruction, No. 7, refused by the court and No. 8, given by it are as follows:

*Instruction No. 7.*—"That before the plaintiffs will be entitled to recover in this action upon the facts and circumstances proven, it is the duty of the plaintiffs to prove to the jury by evidence a demand and refusal on the part of the defendants, at any day prior to the commencement of this action, and also to show that the defendants had it within their power to give up the staves.

*Instruction No. 8.*—"That the jury are instructed that if they believe from the evidence that the plaintiffs purchased of John Cochran the staves and property in the declaration mentioned, and that they paid him for the same, and that said property was delivered to them, and afterwards came into the possession of the defendants, without the consent of the plaintiffs, then the plaintiffs are entitled to recover in this action so much damage as the jury may from the evidence be satisfied the plaintiffs have sustained."

To maintain *trover* the plaintiff must show a conversion of personal property by the defendant and that the plaintiff had at the time of the conversion a right of property in the thing converted and also the possession or right to the immediate possession thereof. This right to the possession must be absolute and unconditional. It is essential that the plaintiff should have the possessory title—that is, the right to the immediate possession of the goods; but this possessory title may be either general or special. Possession with an assertion of title, or even possession alone, gives the possessor such a property as will enable him to maintain this action against a wrong-doer; for the possession is *prima facie* evidence of property. 3 Rob. Pr. 448.

A converson may be proved in three ways: First.—By a

tortious taking. Second.—By any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner. Third.—By a refusal to give up the possession to the owner on demand. When there is proof of the first or second, there is no occasion for proof of the third. In other words, demand and refusal, being only evidence of conversion, need not be shown when there is sufficient proof of actual conversion. *Newsum* v. *Newsum*, 1 Leigh 86.

The object of the demand is to afford the person in possession an opportunity to deliver the property up without costs if he have no claim. *Jones* v. *Dugan*, 1 McCord 429. Therefore where the person in possession has only a special property in the goods, such as a bailee, a demand made after the goods have passed out of his possession and when he could not deliver them would not render his refusal to do so a conversion or evidence of a conversion. But where the person in possession does not claim to hold for another, then it is immaterial whether the demand is made before or after he has parted with the possession; for, if the goods have been disposed of, a demand will be considered as giving an opportunity of making satisfaction therefor and not as affirming any pretended sale of them. *Thomas* v. *Sherley*, 1 Esp. 31.

In the case at bar there is no pretense that the defendants had at any time held the staves as bailees. Until they delivered them to the plaintiffs, if they did deliver them, they held the staves as their own property, and if after such delivery they re-possessed themselves of them, that act constituted a conversion. The taking being without the consent of the plaintiffs was tortious and therefore no demand before suit was necessary. It is only where the property was rightfully in the possession of the defendant subject to the order of the plaintiff that a demand is required before the action.

According to these principles it is apparent that the portion of the first instruction which the court refused to give to the jury was properly excluded. It explicitly told the jury that they must find that the conversion was made by the defendants "*after* the plaintiff had made a demand upon them." If the defendants, not claiming as bailees or as holders for the plaintiffs, were in possession of the staves such possession

was tortious and the plaintiffs were entitled to their action without a demand upon the defendants, either before or after the conversion.

It is very true, this being an action by the buyers against the sellers of goods, that in order to maintain their action the plaintiffs should satisfy the jury that the staves had been delivered to the plaintiffs. The sale in this case being for cash at or before the delivery, there can be no question that the plaintiffs could not maintain their action until the full payment of the contract price and the court so expressly instructed the jury. *Owens* v. *Weedman*, 82 Ill. 409. But whether the staves had been paid for and there had been in fact a delivery of them by the defendants to the plaintiffs, were questions for the jury. There was evidence tending to prove both the delivery and the payment of the agreed price and the jury having found for the plaintiffs on these questions, the court has no power to interfere unless there is a clear absence of evidence to sustain the findings of the jury.

It is claimed, however, for the defendants, the plaintiffs in error, that as the declaration avers the conversion of 80,000 staves and does not distinguish them by any marks, or discriminate between those due on the first and the second contract, the plaintiffs can not recover unless the proofs warranted the jury in finding that they had complied with the terms of and were entitled to recover upon both contracts. I do not think this is the proper view of this case. The evidence tends to show that there were two distinct and separate contracts, the one for 100,000 staves more or less on which 117,000 staves were delivered and paid for, and the other for 50,000 staves which were not paid for in full. Now it is certain that the plaintiffs were not entitled to recover for any of the staves embraced in the second contract because they had not paid for them, and if it appeared from the verdict that the jury necessarily included any part of the staves due on the second contract, this Court would be compelled to set aside the verdict and reverse the judgment of the court below. But upon looking into the record, we find that of the 117,000 staves in the first contract the plaintiffs got 81,500, leaving a balance of 35,500. These the evidence tends to prove were worth $19.70 per thousand, that is, $20.00 per thousand less

thirty cents for loading them on barges. This 35,500 at $19.70 would make precisely $699.35, the sum found by the verdict of the jury. It is therefore apparent that the jury did not include any part of the staves of the second contract in their verdict. It is, at least, not shown by the record that the jury necessarily included any part of the staves of the second contract in their verdict. The part of the defendants' first instruction given by the court distinctly told the jury that the plaintiffs could not recover unless they had the right of property and the possession or the right of possession in the 80,000 staves, *or any part thereof*. This was equivalent to saying to the jury, at the instance of the defendants, that they might find part of the staves for the plaintiffs, although the plaintiffs might not be entitled to recover for the whole of the staves for which the action has been brought. This instruction, I think was correct according to the evidence in this case. It appeared from the evidence that there had been two distinct and separate contracts, and, I think, the plaintiffs had a right to recover the value of the staves converted by the defendants under the one contract while they might not have shown themselves entitled to recover under the other. If the evidence had shown that there had been but a single contract and the 80,000 staves sued for had been an entirety and not severable, then the question would have arisen whether in this form of action the plaintiffs could have recovered any part of the staves without showing that they had fully complied with the whole contract and were entitled to recover for all the staves embraced in it. This question does not arise in this case and is not decided.

Instruction No. 7 was properly refused for the reason, if for no other, that it told the jury the plaintiffs could not recover in this action until they had proven that they not only had demanded the staves before action brought, but "that the defendants had it in their power to give up the staves." This latter requirement was clearly irrelevant and improper under the facts and circumstances of this case as hereinbefore shown.

Instruction No. 8, given to the jury by the court properly stated the law according to the evidence in this case. If the jury should find from the evidence that the plaintiffs had paid

for the staves and the defendants had delivered them to the plaintiffs, then if the defendants afterwards took possession of them, such taking without the consent of the plaintiffs would be tortious and no demand would be necessary to entitle the plaintiffs to recover. This is what the instruction was in effect and substance.

The controversy was mainly whether or not the plaintiffs had paid for the staves, the plaintiffs claiming that they had and the defendants that they had not. The staves having been delivered at the place provided for in the contract, they became the property of the plaintiffs as soon as they paid for them. The defendants were entitled to hold them until they were paid for but no longer. If, however, the defendants continued to hold them after such delivery at the place contracted for upon a false claim for a balance of the price which was not due, they did not thereby defeat the right of the plaintiffs to recover in this action. The question whether the plaintiffs had paid for the staves and whether the claim under which the defendants asserted the right to the possession of the staves was a false or a valid claim was for the jury to pass upon, and having been fairly submitted to them and they having found for the plaintiffs, the court properly sustained that finding.

The propriety of refusing the sixth instruction of the defendants will be hereafter shown.

Some of the defendants' instructions, which were given by the court did not, in my opinion, correctly state the law. But as these instructions were more favorable to the defendants than they should have been, and having been given at their instance, they were not prejudiced by them, and therefore said instructions do not entitle the defendants to a reversal of the judgment of the circuit court.

After the parties had introduced the evidence hereinbefore referred to, the defendants offered to read to the jury a trust-deed from the defendants to W. W. Hall, trustee, dated September 22, 1879, by which the plaintiffs conveyed to the said trustee "all the oil barrel staves bought or handled by them between the first day of July, 1879 and July 1, 1880" to secure the Pittsburgh Stave Company, sixty-six per cent. of the contract price to be paid by said company to the plaintiffs

for said staves, according to the terms of a certain written contract therein referred to, made between the plaintiffs and the said company.   The plaintiffs objected to said trust-deed as evidence, and the court sustained the objection and excluded said deed from the jury.   The defendants excepted to said action of the court, and insist that the same was error. It was proven that the staves sought to be recovered in this action were covered by said trust-deed, but the written contract therein referred to was not read or offered in evidence.

Without considering the questions whether or not said deed could have been properly admitted in evidence without accompanying it with the written contract therein referred to, or whether by said conveyance the title to staves not then in existence but to be thereafter bought and handled passed to the trustee, there can, it seems to me be no question that said deed was properly excluded from the jury.   By its terms the plaintiffs bind themselves "to sell and deliver said staves to said Pittsburg Stave Company."   Before the plaintiffs could make such delivery they must themselves obtain posession of the staves.   The deed necessarily implied that they should do so.   But if the contention of the defendants, that the making of said deed deprived them of the right to obtain possession of the staves, is sustained then the deed destroys itself—it requires the plaintiffs to deliver the staves and at the same time takes from them according to the defendants' interpretation the power to do so, for they can not deliver the staves unless they can first get the possession of them themselves.   But under any reasonable interpretation of this deed the plaintiffs would be entitled to hold or recover the possession of the staves as against the defendants or any one not claiming under the trustee or beneficiaries in the deed.— *Luse* v. *Jones*, 39 N. J. Law 707; *Parkhurst* v. *Jacobs*, 17 Mich. 302.

The defendants' sixth instruction was founded on the effect that should be given to this trust-deed, and as the deed was properly excluded from the jury, the instruction was immeterial and foreign to any evidence in the case, and was therefore rightfully excluded.

I have now considered all the errors assigned by the plaintiffs in error, except the one overruling their motion for a new

trial. It has already been shown that there was no error to their prejudice in the rulings of the court upon the law, and as the evidence was conflicting this Court can not say that it was not sufficient to sustain the verdict; because if the jury credited the plaintiffs' evidence, as this Court must presume they did, it was sufficient to sustain the verdict. The judgment of the circuit court must therefore be affirmed.

AFFIRMED.