# CHARLESTON.

## COE *v*. DENLY.

Submitted September 9, 1924. Decided October 14, 1924.

BROKERS—*Action for Failure to Sell Output of Mine as Agreed Must Allege Defendant's Ability to Perform.*

C., the owner and operator of a coal mining plant, gives and grants D. the exclusive right to sell coal to be mined and

shipped therefrom during a stated period, the time to be extended if necessary to guarantee delivery of a minimum tonnage under the contract, D. to receive as commissions on all sales made by him 8 per cent. of the gross sales prices f. o. b. mines. In consideration thereof D. agrees to furnish C., at the best prices obtainable by him, sufficient orders for coal to keep the mine in continuous operation during the contract period. In an action by C. against D. for failure to furnish or provide orders for coal, as provided in the contract, it is necessary to aver that D. could have secured orders during the whole or part of the contract period at prices which would have enabled C. to operate his mine at a profit.

(Brokers, 9 C. J. § 54 [1926 Anno].)

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Certified from Circuit Court, Cabell County.

Action by Henry L. Coe against C. T. Denly. Ruling sustaining demurrer to the declaration was certified for review.

*Affirmed.*

*Hogg & Hogg* and *Samuel Biern,* for plaintiff.
*Fitzpatrick, Brown & Davis,* for defendant.

LITZ, JUDGE:

The plaintiff sues in assumpsit. The declaration contains two counts. The first count avers that on the 5th day of October, 1920, and for some time prior thereto, the plaintiff was the owner and operator of a coal mine in Mason county, West Virginia, producing considerable quantities of coal for domestic and foreign markets; and that by reason of the great demand then existing for coal, the plaintiff entered into a written contract with the defendant, October 5th, 1920, in order to obtain funds for the purpose of improving the mine and to secure a market for its entire output. The contract, incorporated in the declaration, recites that, being the owner and operator of a coal mine in Mason county, West Virginia, and desiring to secure the services of defendant to sell the entire output of coal therefrom, the plaintiff has agreed, upon terms thereinafter set forth, "to sell and dispose of" to the defendant the entire output therefrom; that as part of the consideration for the contract the

defendant has advanced, or caused to be advanced, to the plaintiff the sum of $15,500, to be used in connection with the production of coal for delivery under contract, and for the purchase of equipment for the mine; that the sum so advanced is evidenced by two notes of the plaintiff, one for $9,000 payable in three months, and another for $6,500 payable in six months, both being secured by a deed of trust on the mining plant.

The plaintiff gives and grants to the defendant the exclusive right to sell all the coal produced and shipped from the mine for the period of one year from the date of contract, and agrees that during this period he will deliver to the defendant, or to whomsoever he may direct, the entire output of said mine. It is further provided that the time shall be extended, if necessary, until 30,000 tons of coal shall have been mined and delivered under the contract. The defendant agrees to sell at the best prices obtainable by him all the coal which the plaintiff may deliver to him, or his order, under the contract, and to furnish the plaintiff sufficient orders to operate his mine continuously during the contract period. It is further agreed that the defendant shall receive as commissions on the sales made by him eight per cent of the gross sales prices of the coal f. o. b. cars at the mine. The contract also stipulates that the defendant may retain from the net prices for coal all sums in excess of $2.50 per ton, to be credited upon the $15,500 loan or advancement and such other sums as he may thereafter lend or advance to the plaintiff under the contract. The defendant is permitted to make allowances and rebates for improper preparation of coal and deduct the same from the gross sales prices; provided, however, that whenever practicable the making of any such allowances or rebates shall be first approved by the plaintiff. The defendant is required to pay on the twentieth of the month for all coal sold and delivered during the previous month, and to furnish the plaintiff, if desired, as soon after the first of each month as possible, a statement setting forth the sales prices and the total returns before and after commissions and other proper charges are deducted. The de-

fendant also assumes responsibility for the collection of all accounts for coal sold by him.

This count further avers that plaintiff complied with the contract on his part and stood ready and willing to deliver the minimum of 30,000 tons of coal during the contract period; that the defendant on the other hand defaulted, and wholly failed to provide or furnish any orders for coal to be produced from plaintiff's mine; that the plaintiff expended several thousands of dollars improving and equipping the mine for the purpose of producing and delivering coal therefrom to the defendant, in compliance with his agreement under the contract; that the plaintiff was not permitted under the contract to sell his coal to others, and by reason of the defendant's absolute failure to furnish orders as required it became and was necessary for the plaintiff to cease operation of his mine, resulting in great loss of profits to him and detriment to the mine; and that plaintiff being thereby unable to repay the $15,500 advancement, the mine was sold under the deed of trust and purchased by defendant. This count avers further that while no definite price was stipulated in the contract, yet it was the understanding and agreement of the parties that the orders to be furnished by the defendant to the plaintiff should be at prices which would enable the plaintiff to operate his mine with reasonable profit; and that the cost of producing the coal would have been $1.00 per ton, and a reasonable profit $2.50 per ton, which would have required a net price of $3.50 per ton to the plaintiff.

The second count adds nothing material to the first except an averment that the current price of coal during the life of the contract was at no time lower than $2.50 per ton and at other times was as high as $14.50 per ton. The circuit court sustained a demurrer to the declaration and, upon the joint application of the parties, certified its ruling to this Court for review.

Neither count of the declaration shows by direct averment or facts stated that the defendant could have secured any orders while the contract was in force at prices which would have produced a profit to the plaintiff. It is true the first

count avers that the cost of producing coal during the contract period would not have exceeded $1.00 per ton, and the second count alleges that the current price of coal during this time was never lower than $2.50 per ton; but no part of either count is incorporated, by reference, into the other. At common law, different counts in a declaration are treated for all purposes as distinct as if they are separate declarations, and unless a second count expressly refers to the first, no defect therein will be aided by the preceding count. 21 R. C. L. 470; *Seal v. Virginia Portland Cement Company,* 108 Va. 806, 62 S. E. 795.

The plaintiff contends that an *implied* term of the contract required the defendant to furnish orders, and at prices, sufficient for the plaintiff to operate his mine continuously at a reasonable profit during the entire contract period. This position is clearly erroneous. Suppose, for instance, the demand for coal at high prices had continued, could the defendant have compelled plaintiff to accept as full performance of the contract such price merely as would have afforded the plaintiff a reasonable profit, notwithstanding the contract expressly provides that the price shall be the best obtainable by the defendant? It is true that the contract includes not only what is expressly stated but also what is necessary to be implied from the language used, and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face. In order that an unexpressed term may be implied, however, the implication must arise from the language employed in the instrument or be indispensable to effectuate the intention of the parties. There can be no implication as against the express terms of the contract. 13 C. J. 558; 6 R. C. L. 857; Page on Contracts, Sec. 1438. The contract is plain and unambiguous on its face. It needs no construction, much less the engrafting thereon of an unreasonable term by implication wholly in conflict with the express language of the instrument. It would certainly be unreasonable to suppose that the parties intended that the defendant would at all times during the term of the contract furnish the plaintiff orders, and at such prices as would enable him to operate

his mine continuously at a reasonable profit, notwithstanding the loss to the defendant may have amounted to many thousands of dollars by reason of the fall in prices for coal, and yet if the demand at high prices for coal should continue plaintiff would be entitled to reap the benefits therefrom while defendant would obtain only reasonable commissions for his services. In other words, the plaintiff would insist on an implied, uni-lateral promise in opposition to the express language of the contract.

The plaintiff argues that the provision in the contract permitting the defendant to retain from the net prices of coal all sums in excess of $2.50 per ton, to be credited upon the $15,500 loan, constitutes an implied agreement that the defendant will furnish orders, at a minimum price of $2.50 per ton. This provision fixing the net amount to be paid the plaintiff by the defendant after retaining a balance as credit on the loan is explained by the high prices of coal existing at the time of the contract. Again we see the fallacy of plaintiff's position—contending in one breath that the defendant should have furnished orders at prices affording the plaintiff a reasonable profit, and in the next that the contract meant the minimum prices should be $2.50 per ton.

We are clearly of the opinion that although the defendant was required to furnish the plaintiff sufficient orders to operate his mine continuously, yet the prices to be fixed in the orders need not have exceeded the best prices obtainable by the defendant; and that in order for the plaintiff to recover it will be necessary to allege and prove the defendant could have secured orders during the whole or a part of the contract period, at prices enabling the plaintiff to operate his mine at a profit. As pointed out, neither count of the declaration contains sufficient averment. The contract in plain terms says the defendant shall furnish orders at the best prices obtainable by him.

The ruling of the circuit court sustaining the demurrer to the declaration will therefore be affirmed.

*Affirmed.*