*66
 
 OPINION OF THE COURT
 

 Gabrielli, J.
 

 We are called upon to determine whether a certain real property lease agreement contains an implied covenant limiting the lessee’s power to assign the lease. The property subject to the lease is located in Sag Harbor, New York. In 1964, petitioner, Robert Rowe, an experienced attorney and businessman and the owner of the land involved herein, leased the property to respondent Great Atlantic & Pacific Tea Co. (A&P) for use as a "general merchandise business”. The agreement required Rowe to erect a building on the property, and provided for a yearly rental of $14,000 for a 10-year term. It also granted A&P options to renew for two additional seven-year periods, at a slightly lower rental. The lease contained no restrictions on assignment of the lease by A&P. Rowe constructed the building as agreed, and A&P took possession and utilized the premises for a supermarket.
 

 Some years later, both parties sought to renegotiate the agreement. Rowe desired a higher rental because of increases in taxes and other expenses, while A&P wished to have the building enlarged. Following protracted negotiations, a new lease was executed in 1971, in which it was provided that Rowe would expand the building by an additional 6,313 square feet, and that the base rental would be increased to $34,420 per year. This figure was reached by estimating the cost to Rowe of the improvements to the building and then computing a rate of return agreed to by the parties and adding that to the old rental. The new lease was for a period of 15 years, and provided A&P with the option to renew for three additional seven-year periods at the same rental. In addition to the base rental, the new lease provided that Rowe was to receive
 
 lVz%
 
 of the store’s annual gross receipts in excess of $2,294,666 and less than $5,000,000. In other words, unless gross receipts reached the $2,294,666 mark, the percentage clause would be inoperable. There was no warranty, stipulation or promise by A&P that sales would climb to the minimum necessary to trigger the percentage clause. The lease contained no restriction on the lessee’s right to assign the lease. Nor did it make any reference to assignability other than providing that the lease would bind the heirs and assigns of the parties.
 

 Unfortunately for all concerned, the new store did not fare as well as had been hoped. Indeed, A&P entered into a period
 
 *67
 
 of retrenchment in which it decided to close several of its less profitable stores, and the Sag Harbor store was one of those selected. Following months of discussion with Rowe and others, and over Rowe’s objections, A&P in 1975 shut down its operation in Sag Harbor and assigned the lease of the premises to respondent Southland Corp., which operates a chain of supermarkets under the name Gristede Brothers. Rowe then commenced this proceeding seeking to recover possession of the premises as well as money damages. His claim is premised on the theory that A&P breached an implied covenant against assignment without consent of the lessor.
 

 Following a nonjury trial, Supreme Court dismissed the petition on the merits, concluding that in the absence of bad faith, which was not shown, A&P had the unqualified right to assign the lease since there existed no provision limiting that right. With respect to Rowe’s claim that the lease contained an implied covenant limiting A&P’s right to assign, the court concluded that he had not met his burden of proof on this issue in that he had failed to prove that no reasonable landlord would have entered into this lease without an implicit understanding that the lessee could not freely assign the lease. The court reasoned that in order to show the existence of such an implicit covenant, the lessor would first be required to prove that without the percentage rent clause, which was the only factor indicating that there might actually exist such an implied agreement, the lease would have been unconscionable.
 

 Petitioner appealed and the Appellate Division reversed, stating that the trial court had placed too heavy a burden upon petitioner. Noting that the courts will find the existence of an implied covenant limiting the right to assign if the lease is such that the landlord entered.into it in reliance upon the special ability or characteristics of the lessee, the court reasoned that the existence of a percentage clause in a lease is a strong indication of such reliance. Although the existence of a base rental in addition to the percentage rental would be some evidence to the contrary, the Appellate Division concluded that in this case that was not true because in the court’s judgment the base rental was not substantial. Accordingly, the Appellate Division reversed Supreme Court and ruled in favor of petitioner. We cannot agree with that determination.
 

 A lease agreement, like any other contract, essentially involves a bargained-for exchange between the parties. Absent
 
 *68
 
 some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to a third party. It is, of course, far too late in the day to seriously suggest that the law has not made substantial inroads into such freedom of private contracts. There exists an unavoidable tension between the concept of freedom to contract, which has long been basic to our socioeconomic system, and the equally fundamental belief that an enlightened society must to some extent protect its members from the potentially harsh effects of an unchecked free market system. Thus, rightly or wrongly, society has chosen to intervene in various ways in the dealings between private parties. This intervention is perhaps best exemplified by statutes mandating the express or implicit inclusion of certain substantive or procedural provisions in various types of contracts (e.g., Insurance Law, § 167; Real Property Law, §§ 226-b, 234, 235-b). It is also illustrated by judicial decisions to the effect that there exists in every contract certain implied-bylaw covenants, such as the promise to act with good faith in the course of performance (e.g.,
 
 Kirke La Shelle Co. v Armstrong Co.,
 
 263 NY 79, 87). In a similar vein, the law has developed the concept of unconscionability so as to prevent the unjust enforcement of onerous contractual terms which one party is able to impose under the other because of a significant disparity in bargaining power (e.g., Uniform Commerical Code, § 2-302). Despite all this, there yet remains substantial room for bargaining by the parties.
 

 Contrary to petitioner’s contentions, this appeal does not implicate any of the methods utilized by society to police both the substance of contracts and the process of contracting. There has been no violation of law or of public policy, nor does it appear that A&P acted in bad faith. Moreover, the status of the parties to this contract is not such that the doctrine of unconscionability would normally be applicable even if there were any indications that the contract was unusually one-sided. Finally, we are not here confronted with a situation in which a party seeks to apply a covenant which must be implied by law in a particular contract. Rather, it is petitioner’s claim that the parties in fact impliedly did agree that A&P could not assign the lease without Rowe’s permission, and simply neglected, for one reason or another, to
 
 *69
 
 verbalize that understanding and to incorporate it into their written contract.
 

 That a particular provision has not been expressly stated in a contract does not necessarily mean that no such covenant exists. As was eloquently stated by Judge Cardozo, "[t]he law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view to-day. A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,’ imperfectly expressed”
 
 (Wood v Duff-Gordon,
 
 222 NY 88, 91, quoting
 
 McCall Co. v Wright,
 
 133 App Div 62, 68). More succinctly expressed, "the undertaking of each promisor in a contract must include any promises which a reasonable person in the position of the promisee would be justified in understanding were included” (5 Williston, Contracts [rev ed, 1937], § 1293, p 3682).
 

 Nonetheless, a party who asserts the existence of an implied-in-fact covenant bears a heavy burden, for it is not the function of the courts to remake the contract agreed to by the parties, but rather to enforce it as it exists. Thus, a party making such a claim must prove not merely that it would have been better or more sensible to include such a covenant, but rather that the particular unexpressed promise sought to be enforced is in fact implicit in the agreement viewed as a whole. This is especially so where, as here, the implied covenant sought to be recognized and enforced is of a type not favored by the courts.
 

 It has long been the law that covenants seeking to limit the right to assign a lease are "restraints which courts do not favor. They are construed with the utmost jealousy, and very easy modes have always been countenanced for defeating them”
 
 (Riggs v Pursell,
 
 66 NY 193, 201; accord
 
 Presby v Benjamin,
 
 169 NY 377, 380; see 1 Rasch, Landlord & Tenant, § 253; Restatement [2d], Property, Tentative Draft No. 4, § 14.1, Comment
 
 a).
 
 This is so because they are restraints on the free alienation of land, and as such they tend to prevent full utilization of the land, which is contrary to the best interests of society (see
 
 De Peyster v Michael,
 
 6 NY 467, 493). Since such covenants are to be construed strictly even if expressly stated, it follows that a court should not recognize the existence of an implied limitation upon assignment unless the situation is such that the failure to do so would be to deprive a party of the benefit of his bargain.
 

 
 *70
 
 In the case presently before us petitioner Rowe has failed to prove the existence of an implied covenant limiting the lessee’s right to assign the lease. Such a convenant is to be recognized only if it is clear that a reasonable landlord would not have entered into the lease without such an understanding, for it is only in such a situation that it can be said with the requisite certainty that to refuse to recognize such a covenant would be to deprive the landlord of the fruits of his bargain. This is not such a case.
 

 An implied covenant limiting the right to assign will often be found in those situations in which it is evident that the landlord entered into the lease in reliance upon some special skill or ability of the lessee which will have a material effect upon the fulfillment of the landlord’s reasonable contractual expectations. In the typical lease in which the landlord is assured of a set monthly rent, and has not placed any unusual restrictions upon the use of the premises, there is no occasion to find an implied covenant precluding or limiting assignment. This is so because the only reasonable expectation of the landlord is that the rent will be paid and the premises not abused, and thus the identity of the tenant is not material to the landlord’s expectations under the lease. If, however, the expectations of the landlord are substantially dependent upon some special skill or trait of the lessee, the lack of which might endanger the lessor’s legitimate contractual expectations, then it may be appropriate to find the existence of an implied covenant limiting the right to assign, for in such circumstances no reasonable person would enter into the contract without assurance that the tenant could not be replaced by an assignee lacking the requisite skills or character traits. Even in such a case, however, the implied restrictions must of course be limited to the extent possible without destroying the landlord’s legitimate interests (see Restatement [2d], Property, Tentative Draft No. 4, § 14.1, Comment
 
 c;
 
 § 14.2).
 

 The type of situation in which a court may properly find that there exists a covenant limiting the right to assign is illustrated by the factual pattern which confronted the court in
 
 Nassau Hotel Co. v Barnett & Barse Corp.
 
 (212 NY 568, affg on opn at 162 App Div 381). There, the owner of a hotel had leased the hotel and all its appurtenances to two men, one of whom was an experienced hotel manager. The lease granted them " 'the exclusive possession, control and
 
 *71
 
 management’ ” of the hotel, and they not only became responsible " 'for the operation * * * and maintenance’ ” of the hotel, but also promised that they would operate it " 'at all times, in a first class, businesslike manner’ ” (162 App Div, at p 382). In lieu of any set rental, the owner was to receive 19% of the gross receipts of the hotel. Subsequently, the lessees assigned the lease to a corporation and the landlord sued to recover the premises. The courts concluded that the lease could not be assigned without the owner’s consent, even though the lease did not contain a provision limiting the lessees’ power to assign, because the entire agreement indicated conclusively that a fundamental premise of the agreement was that the two original lessees would, operate the hotel. This was so in part because the landlord had agreed to accept a percentage of the receipts in place of rent, and thus his legitimate expectations were completely dependent on the ability and honesty of the two individual lessees. To deprive him of the right to depend on the fact that the hotel was being operated by the individuals with whom he had contracted would have been to deprive him of a substantial element of his reasonable and legitimate contractual expectations.
 

 Although the existence of the percentage clause was a significant factor in that decision, it alone was not dispositive. Rather, the court properly considered the entire agreement, with its emphasis on the operation of the hotel and the implicit dependence of the landlord upon the identity of the operators of the hotel. Thus, while a percentage clause in a lease is some sign of an implied agreement to limit the lessee’s power to assign the lease, its significance will vary with the other terms of the lease, the surrounding circumstances, the nature of the business conducted upon the premises, and the identities and expectations of the parties.
 

 Although the lease we are called upon to interpret today does contain a percentage clause, it is a far cry from that involved in
 
 Nassau Hotel.
 
 There, the percentage of gross receipts to be received by the landlord was the only value the landlord was to receive from the agreement, for there was no set rental. Here, in contradistinction, the landlord is provided with an annual rental of some $34,420 in addition to whatever amount he might receive pursuant to the percentage clause. We would also emphasize that the percentage clause does not result in any additional income to the landlord until and
 
 *72
 
 unless the store first attains sales of over $2,294,666 in a particular year. Of some interest is the fact that this figure is considerably higher than the previous record gross sales at the Sag Harbor store at the time the lease was entered into. It is thus evident that the percentage clause, although doubtless of considerable interest to the landlord as a hedge against inflation and as a means of sharing in the hoped for success of the store, was not a material part of the lessor’s fundamental expectations under the lease. Hence, it cannot be said that the lease was entered into in sole reliance upon the skill, expertise, and reputation of A&P, and thus there is no reason to find an implied covenant limiting the lessee’s right to assign the lease.
 

 This conclusion is buttressed by consideration of the circumstances surrounding and preceding the making of the new lease in 1971. It should not be forgotten that at that time the landlord was bound by a long-term lease which provided substantially less rent per square foot of store space than does the current lease, taking into account the expansion in size of the store. Indeed, examination of the two leases indicates that even absent the percentage clause, the new lease was an improvement over the old from the landlord’s point of view. Moreover., comparison with other supermarket leases indicates that the base rental in the new lease is not out of line with the rentals reserved in other leases. Thus we cannot agree with the Appellate Division that it is "not substantial”.
 

 Of additional interest is the identity of the parties to this agreement. Petitioner is an experienced attorney and businessman knowledgeable in real estate transactions. A&P is, of course, a national firm presumably represented by capable agents. The negotiations which resulted in the new lease were long and exhaustive, dealing with a variety of topics, and the lease itself is obviously the result of a process of give and take. Although A&P might well have agreed to include a provision limiting its right to assign the lease had petitioner insisted upon such a clause, we may safely assume that petitioner would have had to pay a price for that concession. In these circumstances, the courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include. As we have previously declared in a similar context, "such lack of foresight does not create rights or obligations”
 
 (Mutual Life Ins. Co. of N. Y. v Tailored Woman,
 
 309 NY 248, 253).
 

 
 *73
 
 Finally, although not necessary to our disposition of this appeal, we would note that even were the circumstances such as to support the conclusion that the lease contains a provision limiting the lessee’s right to assign the lease, that finding alone would not justify judgment in favor of petitioner. It would then be necessary to further consider whether that implied restriction would in fact be violated by assignment of the lease to another supermarket chain in light of all the facts and circumstances.
 

 Accordingly, the order appealed from should be reversed, with costs, and the judgment of Supreme Court, Suffolk County, reinstated.
 

 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order reversed, etc.