OPINION OF THE COURT
John R. LaCava, J.
This is an action by a former tenant to recover security withheld by the landlord pursuant to a provision in the lease which provided for the forfeiture of security upon the voluntary surrender of the apartment by the tenant prior to the expiration of the lease.
After a trial held in Small Claims on January 29, 1987, the *746 court makes the following findings of fact and conclusions of law:
On or about July 1, 1983, plaintiff and his family moved from apartment IK to apartment 2J in the apartment building located at 15 St. Andrews Place in Yonkers. Dr. Patel and Mr. Cesare DeFeo, who is a manager and partner of St. Andrews Associates, executed a signed written lease (entitled Standard Form of Apartment Lease) on July 1st. Paragraph 67, entitled "Option to Terminate”, reads as follows: "The Tenant shall have the option to terminate this lease upon giving written notice by certified mail to the Landlord two months prior to such termination. However, the Tenant hereby agrees to relinquish to the Landlord the security deposit as deposited under paragraph #4 of this lease (or under any lease extensions thereof) and any interest that said security deposit may have accrued as of said termination date. This shall in no event change or alter any of the covenants set forth hereintofore, including the condition in which the apartment is to be left.”
Two renewals of the lease have been executed since then and the parties agreed that the amount of the security in 1986 was $531.
At trial, Dr. Pravin Patel testified that he and his wife decided to move out of the apartment in early January 1986 when it became apparent that a change in employment would necessitate their moving out of Yonkers. Dr. Patel called Mr. DeFeo during the first week of January 1986 and advised him that he intended to move on April 1, 1986. According to Dr. Patel, Mr. DeFeo indicated that this would not be a problem and he further agreed to return the security deposit. Dr. Patel again called Mr. DeFeo in February 1986 to remind him about the move and Mr. DeFeo indicated that he needed written notification sent by certified mail. In an undated letter, which Dr. Patel testified was sent by certified mail on February 28, 1986, he formally notified Mr. DeFeo that he would be moving out of the apartment on April 1st due to his "change in job”. The letter contained no reference to the security, however Dr. Patel testified that he spoke with Mr. DeFeo shortly after the letter was sent and Dr. DeFeo acknowledged that he received the letter/notice. During this conversation, Mr. DeFeo stated: "[AJfter you move out I’ll decide about the security — after we check the apartment out”.
In late February or early March 1986, Dr. Patel spoke with *747 the superintendent of the building who indicated that people had looked at the apartment. The Patels, who are Indian, received a call from an Indian couple in early March 1986. They asked all about the apartment and seemed very interested in renting it. Mrs. Patel testified that this couple wanted to come into the apartment in April. Mr. Patel testified that the Indian husband called him in late March and wanted to know the exact day when the Patels would be moving so that they, in turn, could plan to move in.
The Patels moved out on March 28th or 29th. The apartment was broomclean and undamaged. Mr. DeFeo acknowledged that the new tenant moved in on or about April 1, 1986. Thereafter, the Patels demanded return of the security deposit, and Mr. DeFeo has refused to refund it.
The plaintiff argues that the effect of paragraph 67 as applied to the facts in this case is unconscionable. Notice of intention to leave was given to the landlord 60 days prior to the date on which the plaintiff actually vacated the apartment. A written reminder notification followed 30 days thereafter. Another tenant was found by the landlord and that tenant actually moved into the apartment on or before April 1, 1987. The landlord suffered no loss of rent. Since plaintiff had notification through conversations with the "Indian man” that they intended to move in, he was in effect relieved of any statutory duty which he might have had to sublease and attempt to find a suitable replacement tenant (see, Real Property Law § 226-b). In the plaintiff’s opinion, the landlord would be unjustly enriched in this case by being allowed to keep the security which should be returned to the plaintiff.
Mr. DeFeo, representing the defendant, strongly denies that he in any way indicated to Dr. Patel that he would be relieved of his financial obligations under paragraph 67. Mr. DeFeo testified that he knows that paragraph 67 is in the lease and would not tell a tenant that he would return the security if he received notice of intention to move prior to the expiration of the lease. On this point, the court finds Mr. DeFeo to be credible. The court notes that there is no reference to the return of security in plaintiff’s February 28th notice of intention to vacate.
Mr. DeFeo argues that paragraph 67 is not unconscionable. Many, if not most, of his tenants are happy to have the clause *748 in the lease. Paragraph 67 gives the tenant a way to break the lease, prior to the expiration of the full term, with only minimal damages. Instead of being liable for the cumulative monthly rent due for the entire remaining term of the lease, any tenant who gives due notice of intent to vacate becomes liable for only, in effect, one month’s rent. The tenant is relieved of his burden under Real Property Law § 226-b of mitigating damages by assigning the lease or subletting the apartment. The tenant does not have to expend time, effort, and expense in finding a suitable replacement. Under paragraph 67, the landlord undertakes the burdens and risks which are associated with rerenting the apartment. Rather than a penalty, when viewed in this light, the clause is in effect an agreement as to liquidated damages by and between the parties in the event of an early surrender of the apartment by the tenant. In support of his position, Mr. DeFeo has submitted a slip decision rendered by Judge Eisenberg of the Mount Vernon City Court under an identical set of facts wherein it was held: "Lease is clear to the effect that security is relinquished if tenant elects' to terminate prematurely.” (Vanek v DeFeo, Mount Vernon City Ct, Small Claims, July 23, 1981, Eisenberg, J. [SC No. 1386].)
After considering all of the above, the court finds that paragraph 67 providing for the forfeiture of security upon the voluntary surrender of an apartment by a tenant prior to the expiration of the lease is neither unconscionable nor contrary to law and public policy. "A lease agreement, like any other contract, essentially involves a bargained-for exchange between the parties * * * [and] [a]bsent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish” (Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62, 68-69 [1978]). Here, paragraph 67, of which the plaintiff availed himself, gives certain advantages to a residential tenant which include the ability to terminate a lease prematurely and voiding the statutory duty under Real Property Law § 226-b of assigning the lease. The tenant thus avoids the risk and expenditure of time, effort, and money which would be associated with rerenting an apartment. When viewed in this light, rather than being a penalty or source of unjust enrichment for the landlord, the forfeiture of security appears to be an agreement as to liquidated damages, consented to by the *749 parties at the signing of the lease. Nor does the amount involved here appear to be unreasonable considering the landlord’s risk in possibly not rerouting the apartment immediately in every case. i
Based upon the above, judgmenj! is entered for the defendant dismissing the complaint.