413 S.E.2d 137

**THOMPSON DEVELOPMENT, INC.,**
**Plaintiff Below, Appellant,**

v.

**The KROGER COMPANY, Defendant**
**Below, Appellee.**

No. 20052.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 24, 1991.

Decided Dec. 18, 1991.

Diana M. Savit, Silver, Freedman & Taff, Washington, D.C., Charles G. Johnson, Allen, Johnson & Simmerman, Clarksburg, for appellant.

John O. Kizer, Kay, Casto, Chaney, Love & Wise, Charleston, for appellee.

WORKMAN, Justice:

This case is before the Court upon the appeal of Thompson Development, Inc. (hereinafter referred to as Thompson) from final orders dated January 9, 1989,[1] and August 6, 1990, entered in the Circuit Court of Harrison County which granted summary judgment in favor of the appellee, The Kroger Company (hereinafter referred to as Kroger). The appellant maintains that the trial court erred 1) in granting summary judgment for the appellee/tenant in an action in which interpreting an ambiguous lease required the trier of fact to weigh conflicting evidence and to draw inferences regarding the parties' intentions at the time they entered into their agreements; and, 2) in entering summary judgment in favor of the appellee which essentially allowed the appellee to appropriate for its own use and benefit property which belonged to its landlord, the appellant. Upon a review of all matters of record in this case, we find no errors were committed by the lower court and we therefore affirm.

Holiday Plaza, Inc., the predecessor to the lessor, Thompson, and Kroger entered into a written lease agreement on March 15, 1972, whereby Kroger leased a storeroom in the Holiday Plaza Shopping Center in Bridgeport, Harrison County, West Virginia. The lease began on October 1, 1972,[2] and was for a term of twenty years with the option to renew for five additional terms of five years each.

The appellant constructed a storeroom for the appellee according to the appellee's design and specifications, the cost of which was factored into the base rent. In addition to the base rent, the lease obligated the appellee to pay a "percentage rent" equal to one percent of annual sales over $7,023,480.00. The appellee paid the appellant percentage rent every year from 1976 to 1985. Further, the lease contained a covenant not to compete which barred the appellant from operating or leasing space

1. On January 9, 1989, the lower court granted partial summary judgment in favor of the appellee with respect to the breach of the covenant of continuous operation. It was not until August 6, 1990, that the lower court granted the appellee's motion for summary judgment with respect to the cause of action for conversion. In the interim between the two orders, this Court refused the appellant's petition for appeal based upon the January 9, 1989, final order. This appeal is based upon the filing of a new petition asserting errors in both the January 9, 1989, and August 6, 1990, orders.

2. The lease was modified seven times resulting in the guaranteed base rent increasing from $5,852.90 to $6,438.17 monthly and the primary term extended a full twenty years from August 1, 1974, to July 31, 1991.

to any retail food store within a five-mile radius of Holiday Plaza.

The appellee operated a retail food supermarket in the leased premises until June 18, 1985, when the appellee closed the store, vacated the premises and opened a new retail food supermarket in the East Pointe Shopping Center also located in Bridgeport, West Virginia. The appellee did not surrender the leased premises to the appellant but exercised its right to sublet the premises under the lease. The appellee first sublet the premises to Contracting Materials Inc., d/b/a Creative Building Supplies, for a short period of time. Then, in December 1986, the appellee sublet the premises to Consolidated Stores Corporation, d/b/a Big Lots (hereinafter referred to as Big Lots), which is presently operating a discount retail outlet in the leased premises, according to the appellees. Additionally, upon the closing of the appellee's store, the appellee released Thompson from the covenant not to compete.

When the appellee vacated the premises, the appellee removed all its fixtures and equipment which had been installed on the premises. The record reflects that these items were carried by the appellee on its property accounting system as assets of Store E–706. The fixtures and equipment were sold at a public auction held on the leased premises by Garth Semple & Associates, an auctioneering company. Pursuant to the lease provisions, the appellee had the right to remove these fixtures and equipment at any time. The appellant alleges in Count III of the complaint, that the appellee sold property belonging to the appellant, "including but not limited to safes, light fixtures, sinks, cafe doors, decorations and other special fixtures installed in the demised premises by Thompson." However, the record reflects that these items were removed as part of the remodeling necessary for the subtenants to occupy the premises. Further, the lease provides that the appellee could perform such remodeling at its own expense, and that the appellee was not obligated to restore the changes made to the premises at the expiration of the lease.

Moreover, the subtenant, Big Lots, removed all the false ceilings, as well as shelving and checkout counters used by Kroger. All meat and refrigerated cases and some equipment were also removed. Big Lots provided its own shelving, display counters, checkout counters and other equipment. According to the appellee, all the items it removed from the premises were of a cosmetic or decorative nature and not structural. Moreover, the lease expressly provides that the tenant shall be under no obligation to restore or remove any changes at the expiration of the lease.

Finally, the record indicates that the appellee has not surrendered the leased premises to the appellant. The appellee continues to pay the monthly base rent even though the subtenants which have occupied the leased premises since Kroger left have not been able to earn revenues sufficient to generate percentage rent.

## I.

The first issue centers upon whether the terms of the lease give rise to a covenant of continuous operation which obligated the appellee to occupy and to continue to operate its supermarket and precluded the appellee from subletting to a non-supermarket entity. The appellant argues that certain provisions of the lease create a covenant, express or implied, on the tenant's part to continuously operate a supermarket in the leased premises; a) the tenant will pay percentage rent only if the tenant enjoys a sales volume which can only be generated by the particular type of business, a supermarket, which occupied the leased space for the first thirteen years of the tenancy; b) the landlord will not compete with the tenant by operating its own supermarket; c) the landlord will construct the leased premises in a manner which can only be utilized by a supermarket; d) the grant to the tenant of an unusually long lease term without providing for increases in the base rent along the way; and, e) the recognition that shopping centers have strong economic needs to provide a particular tenant mix (including a strong anchor store). The appellee, on the other hand,

asserts that the written lease is clear and unambiguous, and extrinsic evidence of prior or contemporaneous oral negotiations or understandings may not be used to vary, contradict, add to, or explain the terms of the lease. Further, the express provisions of the lease are inconsistent with and preclude the implication of any covenant which would restrict the appellee's right to sublet or assign the lease.

It is undisputed that the lease entered into between Kroger and Thompson contains the following express provisions pertinent to the resolution of this issue:

> Landlord covenants and agrees, from and after the date hereof and so long as this lease shall be in effect, not to lease, rent, occupy, or suffer or permit to be occupied, any part of the Shopping Center premises or any other premises owned or controlled, directly or indirectly, either by Landlord, its successors, heirs, or assigns, or Landlord's principal owners, stockholders, directors, or officers, or their assignees (hereinafter called Owners), which are within five miles of the Shopping Center premises for the purpose of conducting therein or for use as, a food store or a food department or for the storage or sale for off-premises consumption of groceries, meats, produce, dairy products, or bakery products, or any of them, ...
>
> ....
>
> ... [T]he monthly rental shall ... be ... Six Thousand Four Hundred Thirty-eight and 17/100 ($6,438.17) Dollars.
>
> ....
>
> 25. Tenant may sublet or assign the demised premises at any time provided the business which such subtenant or assignee proposes to conduct does not conflict with exclusive rights granted by Landlord in leases to other tenants. Tenant may notify Landlord of its intent to sublet or assign and the nature of the business proposed to be conducted by the subtenant or assignee. If such notice is given and Landlord does not object within ten days, it shall be conclusively presumed that the proposed business does not conflict with any exclusive rights.

> ....
>
> Tenant's right to sublet or assign the demised premises does not release Tenant from the liability for the payment of the monthly rents.
>
> ....
>
> ... No obligation not stated herein shall be imposed on either party hereto.
>
> ....
>
> 31. Tenant agrees to pay to Landlord a sum of money equal to one (1%) percent of its sales in excess of $7,023,480, hereinafter called the minimum sales base, made from the leased premises during each sales year....

This Court previously held in syllabus point 2 of *Collia v. McJunkin,* 178 W.Va. 158, 358 S.E.2d 242, *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 357 (1987) (quoting Syl.Pt. 2, *Gwinn v. Rogers,* 92 W.Va. 533, 115 S.E. 428 (1922)) that " '[e]xcept in cases of fraud or mistake, parol evidence can not be admitted to vary, contradict, add to or explain the terms of a complete and unambiguous lease, by proving that the agreement of the parties was different from what it appears upon the face of the lease.' " *See also Kanawha Banking & Trust Co. v. Gilbert,* 131 W.Va. 88, 46 S.E.2d 225 (1947). Upon our review of the plain language of the lease agreement we find the relevant provisions to be clear and unambiguous, covering a myriad of details governing the relationship between the parties. Moreover, it is clear that the lease does not contain an express covenant obligating the appellee to continually operate a supermarket in the premises.

Consequently, to imply a covenant of continuous operation into the lease, the implied covenant must not be inconsistent with the express terms of the contract. *Berry v. Humphreys,* 76 W.Va. 668, 672, 86 S.E. 568, 569 (1915); *see also Coe v. Denly,* 97 W.Va. 328, 124 S.E. 921 (1924).

In order to determine if the above-mentioned express terms give rise to an implied covenant of continuous operation, it is helpful to look to other jurisdictions. The majority of jurisdictions refuses to imply a covenant of continuous operation in leases

when that implied covenant contradicts or is inconsistent with an express term or when the fixed base rent is substantial. *See Masciotra v. Harlow*, 105 Cal.App.2d 376, 233 P.2d 586 (1951); *Kroger Co. v. Bonny Corp.*, 134 Ga.App. 834, 216 S.E.2d 341 (1975); *Bastian v. Albertson's Inc.*, 102 Idaho 909, 643 P.2d 1079 (1982); *Chicago Title & Trust Co. v. Southland Corp.*, 111 Ill.App.3d 67, 66 Ill.Dec. 611, 443 N.E.2d 294 (1982); *Keystone Square Shopping Center Co. v. Marsh Supermarkets, Inc.*, 459 N.E.2d 420 (Ind.1984); *Williams v. Safeway Stores, Inc.*, 198 Kan. 331, 424 P.2d 541 (1967); *Riverside Realty Co. v. National Food Stores of Louisiana, Inc.*, 174 So.2d 229 (La.App.), *writ refused*, 247 La. 1037, 175 So.2d 647 (1965); *Stop & Shop, Inc. v. Ganem*, 347 Mass. 697, 200 N.E.2d 248 (1964), *Carl A. Schuberg, Inc. v. Kroger Co.*, 113 Mich.App. 310, 317 N.W.2d 606 (1982); *Great Atlantic & Pacific Tea Co. v. Lackey*, 397 So.2d 1100 (Miss.1981); *Lowe's of Shelby, Inc. v. Hunt*, 30 N.C.App. 84, 226 S.E.2d 232, *review denied*, 290 N.C. 662, 228 S.E.2d 452 (1976); *Rowe v. Great Atlantic & Pacific Tea Co.*, 46 N.Y.2d 62, 412 N.Y.S.2d 827, 385 N.E.2d 566 (1978); *Kretch v. Stark*, 26 O.O.2d 385, 193 N.E.2d 307 (1962); *Mercury Inv. Co. v. F. W. Woolworth Co.*, 706 P.2d 523 (Okla.1985); *Fuller Market Basket, Inc. v. Gillingham & Jones, Inc.*, 14 Wash.App. 128, 539 P.2d 868, *review denied*, 86 Wash.2d 1004 (1975); *Rapids Assoc. v. Shopko Store, Inc.*, 96 Wis.2d 516, 292 N.W.2d 668 (1980).

In addition to the existence of an inconsistent express term or a substantial fixed base rent, other factors utilized by courts include whether there is a provision giving the tenant free assignability of the lease without the consent of the landlord. *Piggly Wiggly Southern, Inc. v. Heard*, 261 Ga. 503, 503–04, 405 S.E.2d 478, 479–80 (1991). Also, courts consider whether the lease is found to have been actively negotiated between the parties. *Keystone Square Shopping Center Co.*, 459 N.E.2d at 423; *Carl A. Schuberg, Inc.*, 317 N.W.2d at 610. If the lease was actively negotiated between the parties, then implying a covenant is disallowed since the parties were free to include whatever provisions they wished. *See id.* Finally, some courts consider whether the lease contains a noncompetitive clause in determining whether to imply a covenant of continuous operation. *Carl A. Schuberg, Inc.*, 317 N.W.2d at 610.

■ Therefore, we hold that in determining whether an implied covenant of continuous operation exists in a lease, the following factors should be taken into consideration: 1) whether the lease contains an inconsistent express term or a provision for a substantial fixed base rent; 2) whether the lease contains a provision giving the tenant free assignability of the lease; 3) whether the lease was actively negotiated by all parties involved; and, 4) whether the lease contains a noncompetitive provision. *See Cepco, Inc. v. The Kroger Co.*, No. 84–3036 (S.D.W.Va. filed Oct. 31, 1986) (unpublished) (district court applied same criteria in interpreting lease in factually analogous case).

■ In applying the above-mentioned factors to the present matter, we find that the appellee paid a substantial fixed base rent. This is evident from the fact that the appellee paid $6,438.17 a month, and had paid $885,416.01 in base rent through the end of 1985; whereas, the appellee had paid only $283,830.59 in percentage payment clause over the thirteen-year period involved. Further, the lease expressly provides that "[n]o obligation not stated herein shall be imposed on either party hereto." This provision directly conflicts with implying a covenant of continuous operation.

Next, it is clear that the lease provides the appellee with the right to assign the premises without the consent of the appellant. Further, the assignability provision does not obligate the appellee to sublet only to another supermarket. The lease only mandates that the premises be used for lawful purposes and that the assignee's business not conflict with exclusive rights granted by the landlord in leases to other tenants.

Moreover, the record is replete with evidence that both parties actively negotiated

this lease. The appellant was assisted in the negotiations by a lawyer, an accountant, and a real estate broker. The appellee was represented by its real estate manager, David Redding. The appellant maintains that it was understood between the parties that a supermarket would always be in operation in the premises. If this indeed was the appellant's intention, the lease should have contained a provision reflecting such.

Finally, the lease did contain a noncompetitive clause. However, the parties do not dispute that Kroger released Thompson from this provision when it vacated the premises. Consequently, this factor is of slight import in deciding this issue.

Thus, we conclude that the lease in the present case does not contain an implied covenant of continuous operation. Consequently, the trial court did not err in granting summary judgment regarding this matter since no "genuine issue of fact to be tried" existed and further "inquiry concerning the facts [wa]s not desirable to clarify the application of the law." Syl. Pt. 3, in part, *Aetna Cas. & Surety Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

## II.

The appellant next argues that the trial court erred in granting the appellee's summary judgment on the appellant's cause of action for conversion. The appellant asserts that the lower court's ruling on this matter essentially found that because the appellee could operate something other than a supermarket at Holiday Plaza, it was free to dismantle the appellant's construction there, and to appropriate for its own use and benefit the property the appellant installed. In contrast, the appellee maintains that an action for conversion will not lie in the absence of actual possession or the right to immediate possession of the property alleged to have been converted, that there is no duty upon the appellee to

restore the premises to their former condition, and that under the express terms of the lease, an action for waste will not lie.[3]

This Court has held that "[a]n action for conversion of personal property cannot be maintained by one without title or right of possession." Syllabus, *Kisner v. Commercial Credit Co.*, 114 W.Va. 811, 174 S.E. 330 (1934). While the appellant in Count III of the complaint alleges that "[s]ome of the items removed from the demised premises belonged to Thompson, including but not limited to safes, light fixtures, sinks, cafe doors, decorations and other special fixtures installed in the demised premises by Thompson," the appellant does not allege that it had a right of possession to these items.

In fact, there is no evidence in the record that the items which were allegedly converted were ever specifically inventoried by the appellant. Further, those items were part of the leasehold and the appellant had no right to possess the leasehold until the termination of the lease. This is evidenced by the fact that the cost of the interior decor was figured into the amount the appellee was paying in base rent. *See Haines v. Cochran Bros.*, 26 W.Va. 719, 723 (1885) (Court held that to maintain conversion action plaintiff must show right to immediate possession of the property). In this case, the lease has not been surrendered by the appellee and the primary term does not expire until July of 1994. Further, the appellee has the option to renew the lease for five successive additional terms of five years each. Consequently, the appellant has no immediate right of possession to the property alleged to have been converted.

Additionally, the lease contains the following provisions:

14. Any remodeling, alterations, and additions to demised premises which Tenant may deem necessary during the term hereof or of any renewals hereof shall be

**3.** Since the lease contains a provision that the "[t]enant shall be under no obligation to restore or remove any such change[s] [resulting from remodeling, alterations and additions to the demised premises] at the expiration hereof," the

lower court acted properly in not considering an action for waste. *See Turman v. Safeway Stores, Inc.*, 132 Mont. 273, 317 P.2d 302 (1957) (court held alterations made pursuant to lease will not be waste).

made at Tenant's expense, and Landlord hereby consents thereto. Major structural changes to such premises shall be made only with Landlord's written consent, which consent shall not be unreasonably withheld. Tenant shall be under no obligation to restore or remove any such change at the expiration hereof.

15. All fixtures and equipment of whatsoever nature, placed or installed in or upon the premises by Tenant shall remain its property, and it shall have the right to remove the same at any time.

The record indicates that the property sold by the appellee belonged to the appellee. This is evidenced by exhibits introduced at the deposition of Charles Flinn, employed by the appellee in the Holiday Plaza Store as a refrigeration mechanic, and David Redding. The exhibits were the auctioneer's reports from the sale of the equipment and fixtures which occurred after the closure of the appellee's store and the list of assets of the appellee's store kept for its property accounting system. Moreover, even though it is clear that the subtenant, Big Lots, did remodel the demised premises so that it could effectively operate its retail store, this occurred within the confines of the lease provision.

In *Cepco, Inc.*, No. 84–3036, the district court, presented with facts and a lease provision analogous to the present case, was asked to determine whether the changes were "structural" in nature. The district court relied upon the definition of structural changes found in *United States v. Cox*, 87 F.Supp. 288, 289 (W.D.Mo.1949) (quoting *Paye v. City of Grosse Pointe*, 279 Mich. 254, 258, 271 N.W. 826, 827 (1937)) that

'Structural change ... is ... such a change as to affect a vital and substantial portion of the premises, as would change its characteristic appearance, the fundamental purpose of its erection, of the uses contemplated, or a change of such a nature as would affect the very realty itself—extraordinary in scope and effect, or unusual in expenditure.'

*Accord, Cepco, Inc.*, slip op. at 29. The *Cepco, Inc.* court then concluded that

Kroger's alterations ... effected only inconsequential changes to the characteristic appearance of ... [the] interior. Further, those alterations were not ones that would change 'the fundamental purpose of ... [the building's] erection,' in that the building retained its purpose as a store building, and in any event, Kroger had the right ... to convert the decor of the interior of the building from that of a grocery store to that of a general merchandise one....

*Id.* at 29.

Similarly, we conclude that the appellee had the right to remodel the demised premises and to remove the property which was removed. Further, in acting within the provisions of the lease, the appellee did not convert property belonging to the appellant. Thus, the trial court committed no error in granting a summary judgment on this issue. *See* Syl. Pt. 3, *Aetna Cas. & Surety Co.*, 133 S.E.2d at 771.

Based upon the foregoing reasons, the decision of the Circuit Court of Harrison County is affirmed.

Affirmed.