OPINION OF THE COURT
David B. Saxe, J.
Does a prime tenant’s surrender to the landlord of its reversionary interest in the master lease operate, in effect, as an assignment thereby triggering a takeover clause in the sublease agreement giving the sublessee the right to match any offer for the assignment of the master lease?
The essential facts are as follows:
In April, 1969, defendant SIA Company (SIA), the owner of 605 Fifth Avenue, entered into a lease of the entire six-floor building with defendant South African Airways (Airways). Airways was to use the building as its main office in North America. The lease was to terminate on June 30, 1990. Paragraph 34 of the lease provided Airways with an option to renew the sublease for an additional term of 21 years. Paragraph 24 of the lease provided that Airways could not assign the lease without *91 SIA’s prior written consent which could not be unreasonably withheld, but that Airways could sublet portions of the premises without SIA’s consent.
In September, 1969, Airways subleased the top four floors to plaintiff (Futterman) for a term of 10 years plus an initial option, which Futterman exercised, to renew the sublease until June 30,1980. The sublease in paragraph 46 granted Futterman a conditional option to renew the sublease for an additional 21 years provided that South African Airways chose to exercise its option to extend or renew the master lease between Airways and SIA. Paragraph 70 of the sublease provided that in the event Airways desired to assign the main lease in its entirety that, upon obtaining a bona fide offer, it would afford Futterman the right of first refusal.
Specifically, paragraph 70 stated: “In the event landlord [Airways] shall desire to assign or sublet its main lease in its entirety, or an entire floor of the building, landlord shall upon obtaining a bona fide offer from such assignee or sublessee submit a copy thereof to the Tenant who shall have the right to, within 20 days of receipt of same in writing, enter into an agreement upon the same terms and conditions. The foregoing first right of refusal shall be subject to the consent of the landlord under the main lease if required.”
The sublease contained no provision requiring Airways to exercise the 21-year option to renew; nor was there any prohibition in the sublease agreement against the surrender by Airways of its remaining interest in the main lease, to the landlord.
SIA was not a party to the sublease and did not approve it since its consent was not required under the main lease.
In the latter part of 1983, Airways decided that the space of 605 Fifth Avenue was no longer suited to its needs and began negotiations with SIA, its landlord.
On December 15,1983, Airways and SIA entered into the first of a two-part transaction. The first step was a lease modification agreement under which the 21-year option to renew set out in the main lease was eliminated.
The second step took place on January 3, 1984 when Airways and SIA executed an agreement which provided that the main lease would be surrendered and terminated, for which Airways would receive payment of $425,000 and a release.
Sublessee Futterman, obviously distressed at this turn of events that seemed to end his right to exercise a 21-year option to renew, cried foul and commenced a suit seeking the right to *92 exercise this option upon complying with the terms of the offer between SIA and Airways. SIA and Airways vigorously dispute Futterman’s argument. Both sides have applied for summary judgment.
The main claim made by Futterman (the plaintiff) is that the surrender and release of the main lease was, in fact, an assignment thus permitting it to match the terms of the offer for the assignment. But, as a matter of law, this is not so. A surrender differs substantially from an assignment. First, a surrender is a yielding up of an estate that can be made only to the remainder interest, in which the lesser estate is merged into the reversion or the remainder (1 Rasch, NY Landlord & Tenant — Summary Proceedings, § 794). Second, the crucial distinction between a surrender and an assignment is that a surrender operates to release the tenant whereas an assignment does not release the tenant from his obligations under the lease assigned (34 NY Jur, Landlord and Tenant, § 388). Futterman argues that he could offer Airways the functional equivalent of a release in the form of an indemnification agreement. But that would mean that Airways would have to rely on Futterman’s credit (or that of his estate) for the balance of its lease (6 years) in addition to the option period (21 years), a total of 27 years. Airways had no obligation to accept such an indemnification which they thought did not provide the same type of protection against future rent claims that a release could. The fact that Airways was able to obtain payment for the surrender of its lease does not alter the fact that the transaction was a termination and surrender of the main lease.
Additionally, if Futterman had (a) wished to prohibit Airways from voluntarily entering into a surrender of the main lease or (b) wished to ensure the exercise by Airways of its 21-year renewal option, it could have negotiated a provision to that effect in the sublease. This was clearly not done and it is not the function of a court to alter the plain meaning of a contract between two competent business entities (Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211).
Plain and simple, paragraph 70 of the sublease, relied upon by Futterman, for his right to match any offer for the “assignment” of the main lease requires that Futterman “enter into an agreement upon the same terms and conditions as the existing offer”. Futterman cannot comply with this requirement since he cannot release Airway from its obligations under the main lease. Only a surrender agreement can effect this. Thus, even if the transaction was considered an assignment, Futterman cannot match *93 the terms of the offer because he cannot provide a release of lease obligations to Airways. Futterman’s position would entail a rewriting of the sublease to give him an absolute right to renew when, in fact, he received only a conditional option. There is simply no legal basis for this position.
Additionally, Airways relies strongly on the decision in Ministers of Ref. Prot. Dutch Chureh v 198 Broadway (59 NY2d 170). The court there held (p 173) that “Where a sublease is expressly made subject to the terms of the master lease, the subtenant has no legal right to compel the tenant to exercise an option granted [to the tenant] for renewal of the master lease * * * in order to enable the subtenant to exercise an option granted it for renewal of its sublease * * * in the absence of either proof of an agreement on the part of the tenant to exercise its option or proof of special circumstances entitling the subtenant to such relief.”
It is Futterman’s contention that Ministers (supra) does not apply here because while Airways may not have been found to exercise its option to renew, it could not sell that right in derogation of Futterman’s right. But that is not the case here. No provision of the sublease prohibited a surrender of the main lease to the landlord and the obtaining of a release from the obligations under the main lease. And, even if a separate sale by way of lease modification of the renewal option had not taken place, Airways’ option to renew would have become extinct by virtue of the surrender and consequent merger of the reversion (Levitt v Zindler, 136 App Div 695). Thus, the basis for Futterman’s exercise of his renewal option would not exist.
Finally, Airways has assured Futterman that his sublease will remain in effect through its expiration date in June of 1990 — when the term of the main lease expires. This comports with the holding of Metropolitan Life Ins. Co. v Hellinger (246 App Div 7, affd 272 NY 24) which determined that a sublease is not terminated by the cancellation, through surrender of the master lease, and the only legal effect of the surrender was to transfer the reversion, as encumbered by the sublease, to the fee owner.
No rights of the sublessee are being cut off (see, e.g., Eten v Luyster, 60 NY 252). The terms of the sublease remains extant. Only the renewal option which, of course, was conditional upon Airways’ exercise of it, has been eliminated. But, as indicated, the option to renew was a conditional right and not an absolute contractual right. That being so, Airways did not violate its contractual obligations of good faith owed to Futterman, in surrendering its reversion and canceling its renewal option.
*94 Accordingly, the plaintiff’s motion for summary judgment is denied and defendant’s motion for summary judgment is granted.