OPINION OF THE COURT
Leonard B. Austin, J.
The parties hereto move pursuant to CPLR 3212 seeking summary judgment in this declaratory judgment action. In its complaint, plaintiff seeks a declaration (1) that the lease dated June 2, 1987, between plaintiff, Middle Village Associates (Middle Village), as landlord, and defendant, Pergament Home Centers, Inc. (Pergament), as tenant, is a sublease and not a pro tanto assignment; (2) that Pergament may not compel Middle Village to extend the terms of a prime lease between Vertical Industrial Park Associates (Vertical), as landlord, and Middle Village, as tenant, so as to enable Pergament to extend the term of the sublease beyond that which Middle Village enjoys; (3) that no term of the sublease requires Middle Village to secure an estoppel certificate or a nondisturbance agreement from Vertical so as to extend Pergament’s term of the sublease; and (4) that the sublease is valid, binding and enforceable requiring Pergament to pay increased rental sums of $224,820 annually as provided in the September 1, 1989 lease amendment (1989 amendment). On the cross motion, Pergament seeks a declaration that the lease is a pro tanto assignment, not a sublease; that Middle Village is required to procure an *554 estoppel certificate and nondisturbance agreement from Vertical; and that the lease amendment is invalid.
SUBLEASE V. PRO TANTO ASSIGNMENT
When a tenant transfers his entire estate or interest in only part of the leased premises, reserving no reversionary interest in that part of the desired premises, he makes a pro tanto assignment of the lease. In a sublease, the tenant reserves to himself a reversionary interest in term. (Woodhull v Rosenthal, 61 NY 382 [1875]; North Side Sav. Bank v Arieh, 210 AD2d 107 [1st Dept 1994].) Here, Middle Village has a ground lease of 265,000 square feet which is a portion of a retail and commercial building and shopping center known as “Metro Mall” and One Rentar Plaza known as “The Center” located at 66-26 Metropolitan Avenue, Middle Village, Queens. Vertical is the landlord. Middle Village subleases a 70,000-square-foot portion of The Center to Pergament pursuant to the terms of a June 2, 1987 sublease (1987 sublease). The express language of the sublease makes it subject, and subordinate, to the prime or master lease (§ 26.01 of the prime lease). Contrary to Pergament’s contention, the 1987 sublease specifically provides in section 2.03: “Option to Renew: Provided this lease has not been terminated in accordance with its terms and the Prime Lease extended and renewed, and Tenant is not in material default of the monetary provisions of this lease * * * Tenant is granted three options to extend the terms of this lease [;] each extension shall be for a term of ten (10) years.” (Emphasis added.)
Given this language, it is solely Middle Village’s right to extend or renew the master lease, in the first instance. However, should Middle Village extend and renew the lease, then Pergament has a right to extend its lease. This situation cannot be termed a pro tanto assignment because, in the event that Middle Village renews the lease, and Pergament elects not to renew, the portion of the premises leased to Pergament will revert to Middle Village in accordance with its renewal under the master lease. (See, New Amsterdam Cas. Co. v National Union Fire Ins. Co., 266 NY 254 [1935].) Accordingly, Pergament is a subtenant of Middle Village. Its rights are derived thereby.
EXTENSION OF THE PRIME LEASE
Pergament concedes in defendant’s reply memorandum of law in opposition (at 1) that “Pergament does not seek to *555 compel Associates [plaintiff — Middle Village] to exercise its renewal rights under its prime lease with Vertical.” As plaintiff has repeatedly argued, Pergament, as a subtenant, “has no legal right to compel the tenant [Middle Village] to exercise its option to grant the latter renewal of the master lease of the entire premises * * * in order to enable the subtenant to exercise an option granted it for renewal of its sublease.” (See, Minister, Elders & Deacons of Refm. Prot. Dutch Church v 198 Broadway, 59 NY2d 170, 176 [1983] [which held: “(T)he court is obliged to determine the rights of the parties in accordance with the express terms of the legal documents executed by them. The subtenant had an option to renew but only if the tenant chose to exercise its option to renew the master lease” (emphasis added)].)
Just as the Court of Appeals determined to let stand the right to exercise one’s business judgment, as does Middle Village have such right, this court will not interfere with or disturb that right, even if Pergament is aggrieved or harmed thereby. In the final analysis, Pergament knew, or certainly should have known, what it was getting and what it had by virtue of the lease agreements into which it entered with Middle Village. That in hindsight Pergament regrets the deal it made, it is not for this court to recast the lease that this record demonstrates was fully negotiated by competent counsel. (See, Chimart Assocs. v Paul, 66 NY2d 570 [1986].) Nothing has been presented to show that the right to prevent Middle Village’s surrender or nonrenewal of the master lease was included in the 1987 sublease or its 1989 amendment.
It is not the function of this court to rewrite or modify the agreement negotiated by these experienced business entities at arm’s length with the aid of competent counsel. (Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211 [1978]; see also, Futterman v South African Airways, 126 Misc 2d 90 [Sup Ct, NY County 1984].) The clear and unambiguous agreement of the parties was to exclude the rights to compel extension of the lease.* (See, Slamow v Del Col, 79 NY2d 1016 [1992] [the intention of the parties is best gleaned from the clear, unambiguous terms of their agreement]; W.W.W. Assocs. v Giancontieri, 77 NY2d 157 [1990] [commercial agreements, including realty transactions, should be enforced in accordance with their terms].) In this regard, Pergament’s position is not aided by *556 the holding in Rowe v Great Atl. & Pac. Tea Co. (46 NY2d 62 [1978]). In Rowe, the Court of Appeals held that where the lease agreement involved a bargained-for exchange between the parties, such agreement would be enforced, even if it appeared unwise. The Rowe Court refused to enforce an implied covenant limiting the tenant’s right to assign the lease where the negotiated lease was silent as to such issue. The 1987 sublease and its 1989 amendment were silent as to the right of Pergament to compel its sublandlord to act to renew its lease. Defendant has not met its burden to demonstrate that such obligation can even be implied.
ESTOPPEL CERTIFICATE AND NONDISTURBANCE AGREEMENT
Defendant argues that section 20.12 of the master lease requires Middle Village to procure an estoppel certificate and nondisturbance agreement from Vertical. That section provides: “Upon Tenants’ written request, Landlord agrees to enter into a non-disturbance and attornment agreement, substantially in the form annexed hereto as Schedule E.” The tenant is Middle Village, not Pergament. There is no provision in the sublease to give Pergament the right to compel Middle Village to seek an estoppel certificate or nondisturbance agreement. Certainly, that is a right which could have been realized through negotiation of the sublease. Accordingly, there is no requirement that Middle Village seek from Vertical such an agreement.
Defendant maintains that even in the absence of an express provision mandating same in the sublease, equity and good faith require that Middle Village seek the estoppel certificate from Vertical. In all contracts, there is an implied covenant of fair dealing and good faith on the parties to employ reasonable or “best efforts” in performing their contractual obligations. (Wood v Duff-Gordon, 222 NY 88 [1917]; see also, Murphy v American Home Prods. Corp., 58 NY2d 293 [1983].) Such covenant has been interpreted to prevent a landlord from unreasonably obstructing a tenant’s use of the leased premises. (See, Times Sq. Stores Corp. v Bernice Realty Co., 141 AD2d 536 [2d Dept 1988].)
However, there must be definiteness to the obligation of the party, as expressly set forth in the contract, to give rise to a duty of utilizing best efforts to accomplish the terms of agreement. (See, Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475 [1989], cert denied 498 US 816 [1990].) Here, the master lease and sublease are clear. Middle Village’s refusal to seek an estoppel certificate or nondisturbance agreement in no *557 way violates its obligation to Pergament. Nor does it interfere with Pergament’s use and occupancy of the premises as contemplated in the 1987 sublease or its 1989 amendment. In the final analysis, Pergament cannot invoke the covenant of fair dealing to add a term to their agreement or to achieve a result contrary to the intention of their negotiated agreement. (Dalton v Educational Testing Serv., 87 NY2d 384 [1995]; see also, Kirke La Shelle Co. v Armstrong Co., 263 NY 79, 87 [1933] [“neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract”].)
Middle Village has the right to terminate the master lease by nonrenewal if it, in its sole business judgment, determines to do so. Pergament, the subtenant, cannot compel Middle Village to renew the master lease. (See, Minister, Elders & Deacons of Refm. Prot. Dutch Church v 198 Broadway, 59 NY2d 170, supra.) Pergament’s reliance on Med Mac Realty Co. v Lerner (154 AD2d 656 [2d Dept 1989]) is misplaced. In Med Mac, the Appellate Division affirmed the enforcement of the express terms of the subject lease agreement. Here, there are no express provisions to enable Pergament to compel the relief it seeks.
SUBLEASE MODIFICATION
In the 1989 lease amendment, Pergament agreed to pay additional sublease rent of $224,000 annually for the last 11 years, 9 months of the sublease term commencing in January 1993. As conceded by Pergament, consideration for the 1989 lease modification does exist. Hence, defendant’s arguments are without merit. The sublease is declared valid, binding and enforceable.
SUMMARY JUDGMENT
It is well settled that summary judgment is a drastic remedy which can only be granted when it is clear that there is no triable issue of fact presented. (Andre v Pomeroy, 35 NY2d 361 [1974]; Alvarez v Prospect Hosp., 68 NY2d 320 [1986].) Where, as here, there is no triable issue of fact, summary judgment is appropriate. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) In this case, the court is presented with clear contractual obligations on the part of the parties vis-á-vis the 1987 sublease and its 1989 amendment. These unambiguous documents form the basis of the legal arguments *558 so well argued by counsel. As such, summary judgment is appropriate in determining questions of law which arise from such agreements. (See, Chimart Assocs. v Paul, 66 NY2d 570 [1986], supra; Tantleff v Truscelli, 110 AD2d 240 [2d Dept 1985].)
Pergament posits that summary judgment should be denied because there is reason to believe that Middle Village and Vertical are conspiring to defeat its rights. Accordingly, Pergament suggests that summary judgment be deferred until discovery pursuant to CPLR 3212 (f) can be had. Summary judgment should not be deferred where unsubstantiated or conclusory assertions, such as Pergament’s conjecture here, are made as a basis to defeat summary judgment. (See, Bosio v Selig, 165 AD2d 822 [2d Dept 1990].) Discovery will not demonstrate anything relevant to the issues presented in this case. At best, Pergament will be able to show clever business manéuvering and planning which, in the context of the 1987 sublease and its 1989 amendment, are permissible. All that Pergament bargained for was the right to remain in the leasehold for so long as Middle Village maintained its status as a prime tenant. So long as Pergament maintains its leasehold through the end of the term, it has no basis to complain.
Accordingly, plaintiffs motion for summary judgment should be granted in its entirety and defendant’s motion for summary judgment must be denied. Therefore, it is, ordered that plaintiffs motion for summary judgment is granted in its entirety and defendant’s motion for summary judgment is denied; and it is ordered that it is declared that the instrument dated June 2, 1987 between plaintiff and defendant is a sublease and not a pro tanto assignment; and it is further ordered that defendant may not compel plaintiff to extend the term of the prime lease between Vertical Industrial Park Associates and plaintiff; and it is further ordered that plaintiff is not obligated to procure an estoppel certificate and nondisturbance agreement from its landlord, Vertical Industrial Park Associates; and it is further ordered that the 1989 sublease amendment is declared to be valid and binding and enforceable; and it is ordered that plaintiffs second cause of action is dismissed as moot.
Settle judgment on 10 days’ notice.

 The same holds true with regard to Pergament’s inability to compel Middle Village to obtain an estoppel certificate or nondisturbance agreement as discussed infra.