Affirmed and Memorandum Opinion filed October 30, 2003









Affirmed and Memorandum Opinion filed October 30,
2003.

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00078-CV

____________

 

NORTH HOUSTON INTERNATIONAL,
L.L.C.,
Appellant

 

V.

 

PW REAL ESTATE INVESTMENTS,
INC., Appellee

 



 

On Appeal from the 189th
District Court

Harris County, Texas

Trial Court Cause No. 99-56085

 



 

M E M O R A N D U M  
O P I N I O N

Appellant North Houston International, L.L.C. (ANorth Houston@) sued appellee
PW Real Estate Investments, Inc. (APW@) for breach of contract, alleging PW
breached a loan commitment letter by wrongfully refusing to close on a
commercial mortgage loan.  Alternatively,
North Houston sued for conversion, alleging that because the commitment letter
contained conditions incapable of performance, the letter agreement is void and
PW has wrongfully retained the funds deposited by North Houston with PW in
connection with the loan application. 
The trial court granted summary judgment in favor of PW on all claims
without specifying the basis for its ruling. 
We affirm. 








Background Facts

In early 1998, North Houston approached PW for the purpose of
refinancing a commercial office building. 
PW issued a loan application, and North Houston deposited $5,000.00 as a
non-refundable application fee, as well as $10,000.00 to be used for any
third-party costs incurred by PW (AThird-Party Deposit@). 
PW and North Houston subsequently entered into a letter agreement for a
loan commitment, and North Houston deposited an additional $30,000.00 with PW
to cover costs and fees incurred by PW in connection with its due-diligence
analysis of the property (AGood Faith Deposit@). 
North Houston alleges this loan was to be traded in the Commercial
Mortgage Backed Securities (ACMBS@) market.  The
Commitment Letter, term sheet, and addenda (collectively, ACommitment Letter@) set forth information North Houston
was required to provide to PW before closing. 

The U.S. Customs Service[1]
was the anchor tenant in the building. The Commitment Letter expressly required
estoppel certificates from all tenants, as well as Aan estoppel
certificate showing U.S. Customs in occupancy and paying the full new rental
amount of $461,608 annually on 31,835 square feet.@ 
North Houston was not aware when it entered into the Commitment Letter
that federal regulations controlled what information the U.S. Customs Service
would be able to provide.  Specifically,
section 552.270-35 of title 48 of the Code of Federal Regulations provides,
that upon joint written request from a lessor and a
prospective lender or purchaser of a building, a Astatement of lease@ will be issued containing the
following information: (1) whether the lease is in full force and effect; (2)
the date to which the rent and other charges have been paid in advance, if any;
and (3) whether any notice of default has been issued.  See 48 C.F.R. '552.270-35 (2003).[2]   








In an attempt to comply with the requirements of the
Commitment Letter, North Houston provided PW with (1) copies of two letters the
U.S. Customs Service addressed to North Houston confirming the existence of two
building leases between North Houston and the U.S. Customs Service; and (2)
copies of the pertinent leases.  However,
PW refused to close and fund the loan, and refused to return any monies
deposited by North Houston, on the basis that North Houston did not provide the
requisite tenant estoppel certificate for the U.S.
Customs Service.

Issues Presented

North Houston presents the following issues for our review:
(1) Did North Houston raise a fact issue, precluding summary judgment in favor
of PW, as to whether (a) North Houston complied with the Commitment Letter=s provisions regarding tenant estoppel certificates; (b) strict compliance by North
Houston was excused due to either the legal impossibility of strict compliance,
PW=s alleged bad-faith motivation for
refusing to fund the loan, or the disproportionate forfeiture that results from
strict compliance? (2) Did North Houston raise a fact issue as to whether
PW breached the Commitment Letter by wrongfully refusing to return any of North
Houston=s deposits? (3) Alternatively,
in the event that there was no breach of contract, did North Houston show that
the Commitment Letter was void due to lack of mutuality or impossibility, and
as a result, did it raise a fact question with regard to whether PW converted
the funds deposited by North Houston in connection with the loan application? 








Standard of Review

The
standard we follow when reviewing a summary judgment is well settled.  Summary judgment is proper only when the movant establishes there are no genuine issues of material
fact and proves it is entitled to judgment as a matter of law.  See Tex.
R. Civ. P. 166a(c).  To be
entitled to summary judgment, a defendant must either (1) conclusively negate
at least one essential element of each of the plaintiff=s causes of action; or (2)
conclusively establish each element of an affirmative defense to each
claim.  See American Tobacco Co., Inc.
v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  In deciding whether there exists a disputed
fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true and indulge all reasonable inferences in
the nonmovant=s favor.  See id.  A summary judgment may be affirmed on any of
the movant=s theories that has merit.  See Cincinnati Life Ins. Co. v. Cates,
927 S.W.2d 623, 627 (Tex. 1996).  Because
North Houston did not generally assert that the trial court erred in granting
summary judgment, our review is limited to the specific issues North Houston
has raised, argued, and briefed on appeal. 
See Plexchem Int=l, Inc. v. HCAD, 922 S.W.2d 930, 931 (Tex. 1996)
(noting that, to preserve error on appeal with regard to all grounds upon which
summary judgment should have been denied, the nonmoving party must raise a
point of error stating the trial court generally erred in granting the summary
judgment).

Analysis

The
parties are in agreement that the choice-of-law provision in the Commitment
Letter dictates that New York substantive law applies to North Houston=s claims based on construction and
enforcement of the contract.  See DeSantis v. Wackenhut Corp.,
793 S.W.2d 670, 677‑78 (Tex.1990), cert.  denied, 498 U.S. 1048 (1991).  








A.        Failure
to Comply with the Conditions Precedent

This lawsuit revolves around express conditions
precedent[3]
in the parties= Commitment Letter.  As the movant for
summary judgment, PW had the burden to produce conclusive summary judgment
evidence that proved North Houston failed to comply with a condition precedent
in the Commitment Letter, thereby relieving PW of the obligation to fund the
loan.  See American Tobacco, 951
S.W.2d at 425 (stating that movant has burden of
showing that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law).  Where
contractual language is plain on its face, it should be so construed as a
matter of law in the summary judgment context. 
Price v. Bartkowiak, 715 F. Supp. 76,
79 (S.D.N.Y. 1989). 

Two
conditions precedent in the Commitment Letter are at issue.  The first one, under the heading of AClosing Requirements,@ reads, in pertinent part, as
follows:

PaineWebber
shall not be obligated to close or fund the Mortgage Loan unless and until
PaineWebber has received the following, at the sole cost and expense of
Borrower: 

. . .

H. At PaineWebber=s request, Borrower shall deliver,
prior to closing and from time to time thereafter, estoppel
certificates in form and substance satisfactory to PaineWebber, from all
tenants under then existing commercial leases covering any portion of the
property which PaineWebber in its discretion designates. 








The
first addendum to the Commitment Letter supplements the original closing
requirements.  Section IV (ADue Diligence Procedures and Costs@) of the addendum begins as follows: AClosing of the Mortgage Loan is
subject to the delivery by the Borrower, and the review and approval by
PaineWebber in its discretion, of the following: . . . .@ 
The addendum adds, as a condition precedent, the following: AH. 
Subject to the receipt and review of an estoppel
showing U.S. Customs paying the full new rental amount of $461,608 annually on
31,835 square feet.@ 

Pursuant
to the Commitment Letter=s express terms, PW and North Houston, both sophisticated
parties with experience in commercial real estate transactions, agreed that
North Houston=s performance of these conditions was
a prerequisite to the funding of the loan. 
Giving these conditions precedent their plain meaning (neither party
argues ambiguity), the loan funding was contingent upon North Houston
delivering tenant estoppel certificates in form and substance
satisfactory to PW, and, in particular, showing the U.S. Customs Service paying
the full new rental amount and leasing the specified square footage.[4]  See Facilities Dev. Corp. v. Nautilus Constr. Corp., 550 N.Y.S.2d 127, 128 (App. Div. 1989)
(noting that a condition precedent exists when the contract shows an intent by
the parties to have one party=s performance precede any obligation by the other
party).  Without the required estoppel certificate from the U.S. Customs Service, PW had
no obligation to close or fund the mortgage loan.  See Oppenheimer, 660 N.E.2d at 418; Lindenbaum,
567 N.Y.S.2d at 220. 








Here,
Scott Leitman, a PW employee, testified in his affidavit that, to
the best of his knowledge, North Houston did not provide an estoppel
certificate showing the U.S. Customs Service in occupancy paying the full new
rental amount of $461,608 annually on 31,835 square feet.[5]  Further, North Houston argues that the U.S.
Customs Service could not have supplied that information in its statement of
lease due to governmental regulations. 

In its
first issue, North Houston contends the two letters from the U.S. Customs
Service addressed to it and forwarded to PW, coupled with the U.S. Customs
leases that PW had received and approved, satisfy the conditions precedent or
at least raise a fact question regarding North Houston=s compliance.  We disagree. 
The express terms of the Commitment Letter required North Houston to
produce to PW an estoppel certificate from the U.S.
Customs Service with the full amount of rent and the total amount of leased
square footage.  Because the terms are
express, PW is not required to waive them or accept other forms of
documentation to satisfy them.  See,
e.g., Preferred Mortgage Brokers, Inc. v. Byfield,
723 N.Y.S.2d 230, 231 (App. Div. 2001) (holding that when an express condition
precedent is not met, the other party is not obligated to perform); Bradenton
Realty Corp. v. United Artists Props. I Corp., 694 N.Y.S.2d 122, 123 (App.
Div. 1999) (holding that defendant was not obligated to proceed to closing
because an express condition precedent had not been satisfied).  North Houston=s argument that PW=s AClosing Checklist@ shows North Houston=s compliance is without merit because
the checklist merely reflects that North Houston provided PW with
documentation, not that the documentation fulfilled the pre-closing
requirements. 








Treating the evidence favorable to North Houston as true and
indulging all reasonable inferences in North Houston=s favor, we hold that PW conclusively
proved that North Houston failed to literally comply with the conditions
precedent.  We overrule North Houston=s first issue for review.

B.        Impossibility, Bad Faith, and Disproportionate Forfeiture 

 

North Houston makes several arguments to support its
position that it was excused from strictly complying with the express terms of
the Commitment Letter.  Under New York
law, parties are required to perform express conditions literally, despite the
resulting harshness, unless to require strict compliance would violate public
policy.  Oppenheimer, 660 N.E.2d
at 418.  Additionally, the highest court
in New York has noted that the non-occurrence of an express condition
precedent, which is not material to the parties= agreement, Amay yet be excused by waiver,
breach[6]
or forfeiture.@  Id. 









North Houston argues that public policy is offended because
the express conditions directly collide with the Code of Federal
Regulations.  Thus, in its third issue, North Houston contends it was
discharged from compliance with this provision of the Commitment Letter because
of legal impossibility.  There are two
types of impossibility that should be distinguished for the purpose of our
analysis.  First, there is impossibility
caused by events occurring after, or regulations promulgated after, contract
formation.[7]
 Second, there is impossibility
caused by facts or regulations existing at the time of contract formation.[8]  In this case, nothing occurred after contract
formation to supervene and to prevent North Houston from literally complying
with the terms of the Commitment Letter. 
Rather, the noted governmental regulation existed at the time of
contract formation and that regulation limited the amount of information the
U.S. Customs Service would be able to provide to North Houston.  Hence, an existing regulation prevented
compliance with the agreed-upon conditions. 
In such a case, the legal reasoning of section 266 of the Restatement of
Contracts should apply.  See Kel Kim Corp. v. Central Mkts.,
Inc., 519 N.E.2d 295, 296 (N.Y. 1987) (recognizing that New York has
applied the impossibility defense narrowly, due in part to the fact that the
purpose of contract law is to allocate the risks assumed by the parties and
stating that the defense should not be available to a party that could have
anticipated the impossibility and guarded against it in the contract).

Section 266 provides that a party=s performance is excused, if at the
time of contract formation, its performance is made impracticable by a fact
which is a basic assumption of the contract and which the party seeking relief
had no reason to know of at the time it entered into the contact.  Restatement
(Second) of Contracts ' 266.  Here, both
parties assumed at the time they entered into the Commitment Letter that North
Houston would be able to procure an estoppel
certificate containing the full amount of rent and the total amount of leased
square footage.  The ability to obtain
such an estoppel certificate was a basic assumption
of the agreement.  However, North Houston=s performance is not excused because,
even though it was not aware of the relevant governmental regulation, it should
have been. 

Section 552.270-35 of title 48 of the
Code of Federal Regulations contains the parameters of what information a
governmental agency can provide to prospective lenders.  See 48 C.F.R. ' 552.270-35.  The exact wording of this clause or a
reference to it must be inserted in all leases with non-governmental
entities.  See id. ' 570.703.  Although neither party introduced into the
record copies of the leases between North Houston and the U.S. Customs Service,
the statement of lease provided by the U.S. Customs Service confirms that the
leases did contain either the regulatory clause or a reference to it.  The first sentence of the statement of lease
explains that the information being provided in the letter is Apursuant to and subject to the
conditions set out in Clause 5@ of the agency=s lease with North Houston.








Because it should have been aware of
the provisions in its leases, North Houston was in a position to guard against
promising the production of documentation it could not deliver.  Consequently, North Houston should not now be
excused for agreeing to an impossible condition.  We overrule appellant=s third issue for review.

In its second issue, North
Houston argues that its non-performance should be excused because PW waived
strict compliance with the conditions precedent in the Commitment Letter by
allegedly exercising bad faith in refusing to fund the loan.  New York law provides that a party waives a condition precedent
when it blocks performance of the condition through a breach of the duty of
good faith and fair dealing.  Lindenbaum, 567 N.Y.S.2d at 220.  Further, where the occurrence of events
leading to the performance of a condition precedent is under the control of a
party, that party cannot rely on the non-occurrence of the condition to defeat its
contractual obligations.  Cauff, Lippman & Co. v.
Apogee Fin. Group, Inc., 807 F. Supp. 1007, 1024 (S.D.N.Y. 1992) (citation
omitted).  

North Houston contends that PW=s insistence on strict compliance
with the terms of the Commitment Letter and its unwillingness to renegotiate
the contract terms conclusively establishes PW=s breach of a duty of good faith and
fair dealing.  In this case, treating the
evidence favorable to the nonmovant as true and
indulging all reasonable inferences in the nonmovant=s favor, we conclude PW did not block
North Houston=s performance of the conditions
precedent.  Rather, the governmental
regulation that North Houston should have been aware of prevented North Houston
from complying. That North Houston could not provide an estoppel
certificate with the required information to PW was not within PW=s control. 








North Houston also argues that PW=s refusal to fund the loan was
motivated by market factors rather than a legitimate need for the estoppel certificate in a particular form.  Even if it is true that PW did not want to
close on the loan because of a crash in the CMBS market,[9]
the fact that PW could have waived strict compliance with the conditions
precedent, but chose not to, does not amount to bad faith and thus waive North
Houston=s duty to perform the express
conditions.[10]  See, e.g., Dalton, 663 N.E.2d
at 291 (finding that, although the covenant of good faith and fair dealing is
implicit in all contracts, it is not without limits, and no obligation can be
implied that would be inconsistent with other terms of the contractual relationship);
Middle Village Assocs. v. Pergament Home Ctrs., 708 N.Y.S.2d 840, 844 (App. Div. 2000) (stating
that a party cannot invoke the covenant of fair dealing to add a term to its
agreement or to achieve a result contrary to the intention of the negotiated
agreement).  We overrule appellant=s second issue for review.








In its fourth issue, North
Houston contends its non-performance should be excused because of the
disproportionate forfeiture that results from strict compliance with the terms
of the Commitment Letter.  North Houston raises this argument
for the first time on appeal.  Issues a nonmovant contends avoid the movant=s entitlement to summary judgment
must be expressly presented by written motion or by other written response to
the trial court.  Riddick v. Quail
Harbor Condominium Ass=n, Inc., 7 S.W.3d 663, 671 (Tex. App.CHouston [14th Dist.] 1999, no pet.)
(citing to Tex. R. Civ. P.
166a(c) (providing that issues not expressly presented to the trial court may
not serve as grounds for reversal of a summary judgment on appeal)); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 675 (Tex.1979).  North Houston=s general argument that (1) monies
were deposited with PW by North Houston in connection with the loan agreement;
and (2) PW failed to return the deposited funds after it refused to fund the
loan did not expressly present the disproportionate forfeiture issue to the
trial court for consideration.  Because
North Houston did not raise the argument below, North Houston has waived this
issue for appellate review.  We overrule
appellant=s fourth issue for review. 

C.        Refusal
to return North Houston=s deposits

 

In its sixth issue, North Houston
argues that PW=s failure to return North Houston=s monetary deposits when the loan did
not close raises a fact issue regarding PW=s breach of the Commitment
Letter.  PW counters that North Houston
did not plead, brief or otherwise argue in the trial court breach of the
deposit provisions of the Commitment Letter, and that this argument has not
been properly preserved for appellate review. 
PW also argues that under the terms of the Commitment Letter, it was
entitled to retain all the deposits.  We
agree with PW on both points. 

North Houston=s pleadings asserted two causes of
action: breach of contract and conversion. 
The only basis of the breach of contract claim was PW=s failure to fund.  North Houston did not assert a separate claim
for breach of a contract based on PW=s alleged wrongful failure to return
the deposits.  Rather, it pleaded factual
allegations relating to PW=s retention of deposits under its cause of action for
conversion.  A pleading, by definition,
determines the issues to be tried.  Erisman v. Thompson, 140 Tex. 361, 167 S.W.2d
731, 733 (1943).  There can be no fact
issue as a result of a non-pled cause of action.  See Monsanto Co. v. Boustany,
73 S.W.3d 225, 233 (Tex. 2002) (finding that the court could not remand a claim
because examination of the record revealed the claim was not asserted below). 








Second, pursuant to the terms of the
Commitment Letter, PW was entitled to keep the three different deposits, which
were governed by three different contractual provisions.  The application fee was non-refundable.  The Third-Party Deposit was to be applied to
the costs of due diligence, which PW=s unchallenged summary judgment
evidence proved were more than the amount deposited.  And finally, PW could keep the Good Faith
Deposit if PW proved that the loan failed to close because of North Houston=s failure to satisfy a condition
precedent.  Because of our holding that
North Houston failed to satisfy conditions precedent to closing, we conclude
that PW was not obligated to return the Good Faith Deposit and did not breach
the Commitment Letter.  See Mfrs.
& Traders Trust Co. v. Reliance Ins. Co., 757 N.Y.S.2d 404, 405 (App.
Div. 2003) (holding that construction contractor was not entitled to
disbursement of funds because he did not fully perform the conditions precedent
in the escrow agreement).  We overrule
appellant=s sixth issue for review.  

D.        Conversion


 

In its fifth and seventh issues,
North Houston contends that PW converted the monies deposited with it in
connection with the loan agreement. 
Under both New York and Texas common law, an action for conversion
cannot be predicated on a mere breach of contract.  See, e.g., Peters Griffin Woodward,
Inc. v. WCSC, Inc., 452 N.Y.2d 599, 600 (App. Div. 1982) (explaining that
conversion claim must allege independent facts sufficient to give rise to tort
liability); Thomson v. Espey Huston & Assocs.,
Inc., 899 S.W.2d 415, 420-21 (Tex. App.CAustin 1995, no pet.).[11]  However, North Houston argues that its
conversion claim does not rest on any alleged breach of contract by PW.  Rather, North Houston argues that the
Commitment Letter was void because of impossibility or lack of mutuality and,
that if the agreement is void, PW converted the monies deposited by North Houston.  








North Houston contends the whole
Commitment Letter fails for lack of mutuality because, in accordance with its
terms, PW had the sole discretion to decide whether North Houston complied with
the agreement=s requirements regarding tenant estoppel certificates. 
North Houston concedes that it did not make this argument in the trial
court below.  For the reasons previously
discussed, this issue is also waived.  

Additionally, we have found that the
doctrine of impossibility does not apply to the facts of this case.  Even if North Houston had proved
impossibility, the Commitment Letter would not have been deemed void.  See In re Farrell, 27 B.R. 241, 246
(E.D.N.Y. 1982) (noting that in New York a Afinding of impossibility discharges
the duty to perform [, but it] does not operate to render an agreement void . .
.@). 
We overrule appellant=s fifth and seventh issues for review.

Conclusion

We affirm the trial court=s order of summary judgment in favor
of appellee.

 

 

 

/s/        Leslie
Brock Yates

Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed October 30, 2003.

Panel consists of Justices Yates,
Hudson, and Frost.

 

 











[1]  As of March 1,
2003, the U.S. Customs Service became part of a broader agency, U.S. Customs
and Border Protection, a new agency within the Department of Homeland
Security.  We refer only to the U.S.
Customs Service in this opinion because the parties do so and because at the
time of the operative facts, it was an independent agency.





[2]  This section
of the regulation or a reference to it was contained in leases between North
Houston and the U.S. Customs Service.





[3]  AA condition precedent is >an act or event, other than a lapse of time, which,
unless the condition is excused, must occur before a duty to perform a promise
in the agreement arises.=@ Oppenheimer & Co., Inc. v. Oppenheim,
Appel, Dixon & Co., 660 N.E.2d 415, 418 (N.Y.
1995) (citations omitted); see also Lindenbaum v. Royco Prop. Corp., 567 N.Y.S.2d 218, 220 (App. Div.
1991).  AExpress
conditions are those agreed to and imposed by the parties themselves.  [Generally, such] conditions must be
literally performed . . . .@  Oppenheimer, 660 N.E.2d at 418. 
The parties do not dispute that the conditions in the Commitment Letter
were express conditions.





[4]  In its motion
for summary judgment, PW discusses the importance of estoppel
certificates and lists the guarantees and/or representations it needs from a
tenant supplying an estoppel certificate.  North Houston addresses these guarantees and
it labels as Aextra-contractual@ the
ones not specifically included in the four corners of the Commitment
Letter.  We need not address the
extra-contractual items because the compliance issue can be resolved solely by
examining the express conditions contained in the first addendum to the parties= agreement regarding the full amount of rent and the
total amount of square footage leased by the U.S. Customs Service.





[5]  North Houston
did not object to Leitman=s affidavit in the trial court and therefore waived
any objection to this summary judgment evidence on the basis that Leitman lacked personal knowledge.  See Hou-Tex,
Inc. v. Landmark Graphics, 26 S.W.3d 103, 112 n.9 (Tex. App.CHouston [14th Dist.] July 13, 2000, no pet.) (AWhether an affiant has personal knowledge and is
competent are objections to form.@)
(citing Rizkallah v. Conner, 952 S.W.2d
580, 584-86 (Tex. App.CHouston [1st Dist.] 1997, no writ)).  Further, North Houston=s objection is waived because there is inadequate
briefing to support its argument.  See
Tex. 
R.  App.  P.  38.1(h). 
No broad issue is presented urging that the trial court erred in
granting the summary judgment as a matter of law.  The lack of a general point of error prevents
us from delving further into an analysis of PW=s
summary judgment evidence.  See Malooly Bros., Inc. v. Napier, 461 S.W.2d
119, 121 (Tex. 1970). 





[6]  Although it
argues PW breached the Commitment Letter by failing to return certain deposits,
North Houston does not contend its performance of the conditions precedent is
excused by virtue of PW=s alleged breach.





[7]  See Restatement (Second) of Contracts '' 261, 264. 





[8]  See id.
' 266. 





[9]  The record
contains anecdotal evidenceCmedia articlesCregarding
the state of the CMBS market and subjective opinion testimony by a North
Houston witness opining that PW=s motivation to refuse to close was based on market
factors.  The opinion testimony is
nothing more than conclusory assertions, and is
insufficient to raise an issue of fact to defeat summary judgment.  See, e.g., Burrows v. Arce,
997 S.W.2d 229, 235‑36 (Tex. 1999). 
Attached to the affidavit of North Houston=s
witness are two newspaper articles regarding the downturn in the CMBS market in
the fall of 1998.  There is no foundation
for their consideration as summary judgment evidence; however, PW did not
obtain a ruling on either a foundation or hearsay objection to them, and we
therefore consider them as part of the record. 
Landmark Graphics, 26 S.W.3d at 112 (finding party waived hearsay
and foundation objections). 





[10]  We note again
that this dispute can be resolved solely by examining the express terms
contained in the Commitment Letter, namely the requirement that North Houston
provide PW with an estoppel certificate from the U.S.
Customs Service with the full amount of rent and the total amount of square
footage leased by the agency.  If
resolution of the dispute had compelled consideration of the extra-contractual
requirements, the issue would have become whether the U.S. Customs Services= statement of lease was an estoppel
certificate in a form and substance satisfactory to PW.  We then would have undertaken an analysis to
determine whether PW exercised good faith in the exercise of its discretion to
approve the form and substance of the tenant estoppel
certificates.  See Dalton v.
Educational Testing Serv., 663 N.E.2d 289, 291
(N.Y. 1995) (holding that if a contract contemplates the exercise of
discretion, there is an implied promise not to act arbitrarily or irrationally
in the exercise of that discretion).  





[11]  Although
neither party argued that Texas law applies to North Houston=s conversion claim, as a tort cause of action, the
choice-of-law provision in the Commitment Letter would not dictate that New
York substantive law applies to a conversion claim.  For a tort claim, the Amost significant relationship@ test would apply.  Guitierrez
v. Collins, 583 S.W.2d 312, 318-19 (Tex. 1979).  The record is devoid of facts showing the
most significant relationship, and we therefore cite both New York and Texas
law.  The result is the same in either
case.