M.W. v R.R. (2026 NY Slip Op 50278(U))

[*1]

M.W. v R.R.

2026 NY Slip Op 50278(U)

Decided on March 3, 2026

Supreme Court, Rockland County

Goodstein, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 3, 2026
Supreme Court, Rockland County

M.W., Plaintiff,

againstR.R., Defendant.

Index No. XXXXX

Jeffrey A. Goodstein, J.

INTRODUCTIONParties should generally be permitted to discontinue an action, provided that the discontinuance is filed within the time parameters set forth in CPLR § 3217. However, there are exceptions, particularly where children are involved, and especially when the safety of children is at issue. To this end, any application to discontinue must be evaluated with due regard to the interests of the children, since the state has a legitimate interest in protecting children from abuse or neglect . See generally Irene D. V. Anthony D., 113 Misc 2d 561 (Family Court New York County 1982).
In this action seeking divorce, with a contested custody dispute, the Court finds an issue of first impression, involving the interplay between CPLR § 3217(a), the rights, duties and obligations of an attorney for the child, a temporary order of protection, the parties' right to contract, and the validity of an arbitration agreement. The principal issue is whether this Court should accept a stipulation of discontinuance, contained in an "Agreement to Arbitrate" filed with this Court. In this Agreement, the parties state that they agree to arbitrate not only issues of support, maintenance and equitable distribution, but also issues of custody and visitation. The Court appointed attorney for the child ("AFC") was not a signatory to the arbitration agreement when there is a temporary order of protection in effect protecting the child, and the AFC and the Plaintiff both object to the discontinuance.
For the reasons that follow in this Decision and Order, this Court finds that: (1) because [*2]of the Court's function as parens patriae in contested custody matters, (2) because of the existence of a temporary order of protection in favor of the child, and (3) because the attorney for the child objects to the discontinuance, discontinuance of this action should not be permitted even though the parties agreed to same. Additionally, the Court finds that the stipulation does not comply with CPLR §3717.

PRELIMINARY STATEMENT
On October 3, 2025, this Court issued an Order (hereinafter referred to as the "October 2025 Order") which provided, inter alia, that:
WHEREAS, the parties entered into an arbitration agreement dated September 12, 2025, that included a stipulation discontinuing the instant action; andWHEREAS, the Attorney for the Child was not a signatory of said agreement; andWHEREAS, an issue as to the validity of the Stipulation of Settlement pursuant to CPLR 3217 has been raised as has the issue of the parties agreeing to arbitrate the issue of Custody and parental access (Goldberg v. Goldberg, 124 AD3d 779) as well as other terms of the agreement; andIT IS HEREBY ORDERED that all parties and the Attorney for the Child shall submit briefs on the issue of the validity of the agreement simultaneously on October 17, 2025 at 5:00 p.m.

 BACKGROUND
This instant matter has a substantial litigation history, much of which will not be repeated herein. However, as for relevant background, the parties were married on June 13, 2020. There is one child of this marriage, to wit: Z., born xx/xx/xxxx. The instant action for divorce and ancillary relief was commenced on February 10, 2023 by the filing of a Summons and Verified Complaint with the Rockland County Clerk on February 10, 2023. The Defendant interposed a Verified Answer on March 3, 2023. A Preliminary Conference was held in this matter on April 4, 2023.
On April 15, 2025, an Administrative Order was issued by the Hon. James P. Murphy, J.S.C., D.C.A.J., assigning the undersigned Justice to hear and determine this matter. On April 28, 2025, this Court issued an Order Appointing Attorney for the Child. On April 28, 2025, this Court issued a Temporary Order of Protection on behalf of the child.[FN1]
On September 12, 2025, the parties executed the subject Arbitration Agreement ("Agreement") filed with the Court on September 22, 2025. On January 7, 2026 this Court issued a Decision and Order (hereinafter referred to as the "January 2026 Order")[FN2]
which, inter alia and in sum and substance, denied the Defendant's application seeking the disqualification of the AFC and denied the Defendant's [*3]application seeking the appointment of a new AFC. The instant Decision and Order with respect to the October 2025 Order was held in abeyance pending the January 2026 Order.

THE PARTIES' CONTENTIONS
Defendant's Contentions:The Defendant asserts that a stipulation of discontinuance executed by the parties is binding and terminates the jurisdiction of the Court. She argues that the AFC, while she is the advocate for the child, she is not a procedural party and her signature is not required to effectuate a stipulation of discontinuance. The Defendant alleges that the Court lacks jurisdiction over the instant custody matter following the execution of a valid stipulation of discontinuance, and the parties have a constitutional right to determine the best interests of the child. The Defendant argues that stipulation of discontinuance is binding and enforceable, and that judicial resources should not be expended on matters which have been voluntarily discontinued. The Defendant alleges that the parties freely chose the Rabbi, that there was no fraud, collusion, mistake or accident, especially where the Plaintiff induced the execution of the Agreement. The Defendant alleges that the Agreement, which resolved all issues, included a stipulation of discontinuance, and that the Agreement is signed and notarized by the parties after consultation with counsel of their own choosing. 
The Defendant maintains that a stipulation of discontinuance is effective even if it is contained within an agreement signed by the parties. The Defendant alleges that the stipulation of discontinuance is valid and enforceable notwithstanding the validity of the other provisions in the agreement. The Defendant alleges that in the Agreement, the parties included a severability clause which could be used to enforce the remainder of the Agreement. The Defendant alleges that even if the arbitration provision in the Agreement is deemed nonbinding and unenforceable, the severability clause ensures that the stipulation of discontinuance remains in effect. The Defendant argues that allowing a party to challenge the stipulation of discontinuance based on whether the child custody arbitration portion of the agreement would undermine the severability clause to which the parties agreed.
The Defendant further argues that CPLR § 3217(a)(2) applies even when a divorce action in Supreme Court involves child custody matters. The Defendant asserts that the absoluteness of a discontinuance under this section applies in all circumstances. The Defendant claims that the stipulation of discontinuance does not purport to alter or extinguish any independent legal rights of the child. The Defendant argues that there are very limited exceptions to the termination of jurisdiction following a stipulation of discontinuance, such as a Family Court Act Article 10 proceedings. He maintains that in the event that the Court determines that approval to discontinue is required after a voluntary discontinuance, then a formal motion would be required, which would, ostensibly, upend established practice of voluntary discontinuance(s) in matters involving child custody.
The Defendant alleges that the AFC does not represent a party to the divorce. She argues that CPLR § 3217(a)(2) requires that the stipulation of discontinuance be signed by the "attorneys of record for all parties", and the term "parties" refers to the individuals named in the proceeding or have legal standing to assert or defend claims. The Defendant argues that requiring an AFC to sign stipulation(s) of discontinuance would improperly elevate their role beyond [*4]statutory or ethical bounds, and alleges that it would give the AFC "unprecedented power" over a personal decision. The Defendant alleges that CPLR § 3217(a)(2) permits a voluntary discontinuance before the matter is submitted to the court or jury, and the matter has not been submitted to the court or jury in this instance. The Defendant finally argues that the parties have a right to discontinue this action and pursue alternative dispute resolution methods.
As to the Court's role and power over the parties' desire to arbitrate, the Defendant argues that while courts have held that their role as parens patriae must not be usurped, such authority extends where the conformation of an arbitration award is disputed, and that the courts cannot stop parties from engaging in alternative dispute resolution methods if they so wish (see Defendant's Brief, pages 14 -15). While the Court initially agrees with the generalized notion that courts cannot stop parties from seeking alternative dispute resolution, the Court parts ways with the Defendant based upon the provisions of the Agreement after a review of same.
Plaintiff's Opposition:The Plaintiff alleges that the Defendant is, in effect, attempting to discontinue this action so that she can immediately thereafter file an action in New York County where her family rents an apartment. The Plaintiff claims that in September 2025, a Rabbi was contacted to assist the parties in resolving their contested issues. The Plaintiff maintains that the Rabbi thereupon presented the parties with the Agreement. The Plaintiff alleges that the Defendant executed the Agreement and filed same on September 22, 2025 alleging that the divorce action was discontinued, but the Plaintiff thereupon objected to the discontinuance. He alleges that the Agreement cannot serve as a stipulation of discontinuance because it was not signed by the attorneys of record in this action. The Plaintiff alleges counsel for the parties did not sign the Agreement, nor did counsel for the parties sign a stipulation of discontinuance. The Plaintiff argues that the rule that counsel must sign any stipulation of discontinuance is not discretionary.
The Plaintiff also argues that agreements to arbitrate custody issues are invalid in New York, which is the state with jurisdiction in this matter. The Plaintiff argues that even if the Agreement served to discontinue the action with respect to the financial issues, it cannot discontinue the action concerning the custody issues because custody issues are not subject to arbitration in New York. The Plaintiff claims that it is irrelevant that New Jersey permits arbitration of custody issues because New Jersey does not have jurisdiction over custody of the child. The Plaintiff alleges that the child has resided in the State of New York for her entire life.
Attorney for the Child's Opposition:The AFC alleges that once an action has commenced and advanced, CPLR § 3217(b) requires court approval, and that discontinuance is not a matter of right, but lies within the discretion of the Court. The AFC alleges that in family law matters, especially ones involving custody, allegations of abuse , and visitation, discontinuance is not a matter of right, but it lies within the discretion of the Court to protect the best interests of the child. The AFC notes that both she and the Plaintiff object to the discontinuance. The AFC alleges that CPLR § 3217(a) permits discontinuance without an order of the Court, but only prior to issue being joined or, in [*5]limited circumstances, where all parties of record consent in writing. The AFC alleges that she must be afforded an opportunity to be heard before a proceeding affecting the child's welfare be discontinued.
The AFC also claims that she is not a signatory to the Agreement and that she did not have an opportunity to review the Agreement prior to the signing thereof. The AFC alleges that the Court must act as parens patraie to do what is best for the child. The AFC argues that a discontinuance would "disintegrate the very protections the Court has already put in place to ensure the child's safety". The AFC alleges that there is an active temporary order of protection in place in her client's favor and the AFC continues to serve by court appointment, reinforcing the need for continued judicial supervision. The AFC maintains that the child's welfare is at issue and the discontinuance would remove safeguards put in place by the Court. The AFC alleges that the Defendant's own filings reinforce why discontinuance would endanger the child's safety, as one day before the signing of the Agreement, the Defendant moved to restore Family Court's order requiring supervision for the Plaintiff. The AFC argues that the Defendant's own conduct in this action underscores that the child's welfare is deeply troubled and "at escalating risk".

DISCUSSION AND ANALYSIS

DISCONTINUANCEThe Agreement, at Paragraph "44", provides:
44. The parties expressly acknowledge that they understand and agree that arbitration before the Arbitrator shall be the exclusive forum for the adjudication of the above listed disputes and as set forth above by agreeing to arbitration they are waiving their rights to other resolution processes, such as court action or other arbitration, and that the parties shall be precluded from bringing suit in court with respect to the disputes listed above, except as to enforce this Agreement. This provision shall be a complete defense to any suit, action or proceeding instituted before any court or other body with respect to the above listed disputes, provided, however, that, notwithstanding this provision, any party may seek interim judicial relief in aid of arbitration, to prevent a violation of this Agreement pending arbitration, or to enforce any arbitration award. If either party violates this provision, the other party shall be entitled to dismissal or injunctive relief regarding such court action or arbitration and recovery of all costs and disbursements, losses, and attorneys' fees related to such other proceeding, if such claim is dismissed, to the extent permitted by law. The Parties further agree to immediately discontinue any and all court actions, if any, relating to the matters discussed in Paragraph 2 of this Agreement and the parties shall immediately execute all documents necessary to complete the foregoing. The parties agree that the court case, if any, is hereby discontinued and all prior orders, decisions, findings and stipulations, if any, no longer have effect. The invalidity of any provision of this Agreement shall not affect the validity of any other provision of this Agreement. In the event that a court of competent jurisdiction determines that any provisions of this Agreement fail to comply with the legal requirements for the compulsory arbitration of the disputes listed above, it is the parties' intention that the court shall equitably reform such provisions to the extent necessary (and only to the extent necessary) to conform the offending provisions to such legal requirements.(emphasis added).As a threshold matter, both the Plaintiff and Defendant aver that CPLR § 3217(a) applies. The AFC avers that CPLR § 3217(b) applies. The parties and the AFC are effectively at odds as to the operative provision of CPLR § 3217. The Court therefore finds that it must, first, address the operative provision of CPLR § 3217. CPLR § 3217(a)(2) provides:
(a) Without an order. Any party asserting a claim may discontinue it without an order

 * * *
2. by filing with the clerk of the court before the case has been submitted to the court or jury a stipulation in writing signed by the attorneys of record for all parties, provided that no party is an infant, incompetent person for whom a committee has been appointed or conservatee and no person not a party has an interest in the subject matter of the action; orCPLR § 3217(b) provides:
(b) By Order of Court. Except as provided in subdivision (a), an action shall not be discontinued by a party asserting a claim except upon order of the court and upon terms and conditions, as the court deems proper. After the cause has been submitted to the court or jury to determine the facts the court may not order an action discontinued except upon the stipulation of all parties appearing in the action.Initially speaking, the AFC argues that since "...issue has long since been joined, discovery completed, witnesses sworn, and the Court has issued material orders..." (see AFC Brief, page "3"), CPLR § 3217(b) applies.
The Court disagrees with the AFC on an initial basis; the Court finds CPLR § 3217(b) inapposite in the first instance. In Emigrant Bank v. Salimano, the court held that
"...[t]he third stage of a litigation, as relevant to a discontinuance, is the period after the case has been submitted to the court or the jury for a determination of the facts. Once an action or a proceeding has advanced to the point of deliberation and fact-finding, there can be no discontinuance except by leave of court upon such terms and conditions as the court deems proper and a stipulation of all parties appearing in the action...[t]hus, CPLR § 3217, viewed in its entirety, operates like a seesaw, allowing for discontinuances by mere unilateral notice at the earliest stage of a litigation, while imposing incrementally greater requirements upon the party seeking the discontinuance the farther the litigation progresses.The statute is easily applied in cases that go to trial. In such instances, the submission of the case to a jury for its findings of fact, or the submission of the case to a court during a bench trial, operates as a bright line separating the discontinuance that may be sought using the pre-deliberative mechanisms of CPLR §§ 3217(a)(2) and (b) from the mechanism of CPLR § 3217(b) which attaches once the deliberative phase begins..."Emigrant Bank v. Solimano, 209 AD3d 153 (2d Dept. 2022). While testimony has, in fact, been taken, the trial was never completed and submitted to the Court for a determination of the facts (Emigrant Bank, supra). This matter has not advanced to the point of deliberation and fact-finding. While testimony was taken in Rockland County prior to the assignment to the [*6]undersigned, this Court has not, at this juncture, declared a mistrial. It is of no moment that discovery may or may not have been completed, and it is of no moment that "material" orders may have been issued. Matrimonial courts routinely issue material orders pendente lite; but a material pendente lite order does not mean that the case was submitted to the undersigned for fact-finding and deliberation on a final basis. Therefore, the Court finds that, at this point, CPLR § 3217(a) is operative, unless, of course, the Court finds that the parties cannot discontinue pursuant to CPLR § 3217(a). CPLR § 3217(a)(2) clearly provides that a party may discontinue without a court order:
"...by filing with the clerk of the court before the case has been submitted to the court or jury a stipulation in writing signed by the attorneys of record for all parties, provided that no party is an infant...no person not a party has an interest in the subject matter of the action..."(emphasis added).The Defendant argues to the Court that once a stipulation of discontinuance is signed by the parties and filed with the Court, the Court is divested of jurisdiction and it terminates the underlying divorce proceeding. The Court disagrees under the circumstances of this case.
As an initial matter, the Agreement is in derogation of CPLR § 3217(a)(2) inasmuch as it was neither signed by the Plaintiff's counsel nor the Defendant's counsel. The text of CPLR § 3217(a)(2) makes clear that the signatures of counsel are required, and the Agreement is devoid of the signature(s) of counsel for the parties. The text of the statute could have provided that any stipulation of discontinuance be signed just by the parties. It does not. Inasmuch as CPLR § 3217(a)(2) specifically requires the signatures of the attorneys of record for all parties, and inasmuch as the Agreement does not contain the signature of the attorneys of record for all parties, the Agreement fails to comply with CPLR § 3217(a)(2).
The Court also disagrees with the AFC's position that the Agreement which seeks to discontinue the action is invalid because she was not a signatory. A child is not a party to a matrimonial action. The parties to a matrimonial action are the parents. While the Court certainly has to consider, in a contested custody matter, the express wishes of the children as a factor (Silverman v. Silverman, 186 AD3d 123 [2d Dept. 2020]), their wishes are not dispositive. Whether the Court can choose not to honor a stipulation of discontinuance which discontinues a divorce action is a separate issue. In this instance, the Court declines to accept the Agreement as a stipulation of discontinuance.
CPLR § 3217(a)(2) provides this Court with the authority to decline to permit the discontinuance by stipulation. It reads "...provided that...no person not a party has an interest in the subject matter of the action..." (emphasis added). While a child may not be a party to the action, a child is a person. See generally Matter of Bennett v. Jeffreys, 40 NY2d 543 (1976). The Second Department has made it clear that children have a real and substantial interest in the outcome of contested custody litigation, writing, in part:
"...[s]ubstantively, and more importantly, it cannot be denied that a...child has a real and substantial interest in the outcome of litigation between the parents...[i]t seems self-evident that the child is the person most affected by a judicial determination on the fundamental issues of responsibility for, and the environment of, the child's upbringing. [*7]To rule otherwise would virtually relegate the child to the status of property, without rights separate and apart from those of the child's parents...."Matter of Newton v. McFarlane, 174 AD3d 67 (2d Dept. 2019). The Second Department characterized the child's interest in the outcome as "vital". Matter of Newton, 174 AD3d at 75.
A party can argue that an AFC has no right to object to litigants voluntarily electing to discontinue their divorce action. That argument is certainly well-taken. In JM v. RM when discussing the role of an AFC:
"...[i]t is worth summarizing: the AFC is tasked with the weighty responsibilities of zealously advocating for his or her client...taking an active role in the proceedings...and consulting and counseling the client...[i]n addition, the AFC must subject themselves to the ethical requirements applicable to all lawyers...including the rules of good lawyering and professional responsibility..."JM v. RM, 77 Misc 3d 506 (Supreme Court Nassau County 2022). The AFC, once assigned by the Court, is an attorney in the matter who must represent his or her client. She has to advocate for and counsel her client, she has to take an active role in the proceedings, and she must comport herself with ethical obligations imposed upon counsel. The AFC's role in cases is much deeper than just a functional one in representing a client. AFC's develop relationships with their clients and must advocate for them without prejudicing their rights. See generally M.M. v. K.M., 62 Misc 3d 487 (Supreme Court Nassau County 2018).
The Court finds that while the AFC's position on behalf of her client is not dispositive on whether or not parties in a contested custody matter may discontinue an action, her position on behalf of his or her client is entitled to weight and consideration. The degree of weight and consideration depends upon a multiplicity of factors, such as the age and maturity of the child, but also should depend, to some degree, on whether or not there are allegations of domestic violence and/or abuse or neglect in a specific case. Such a logical conclusion is in-line with the ethical rules promulgated to counsel and the Second Department's reasoning in Matter of Newton v. McFarlane, supra. That weight and consideration, however, requires a fact-specific analysis.
In this instance, the child has a clear interest in the outcome of the custody litigation between their parents. The child, through the AFC, objects to the discontinuance of the action. The Court finds that in this contested custody matter where the AFC, on behalf of her client, objects to the discontinuance, the parties cannot simply discontinue as a matter of right, but, rather, they need permission of the Court to discontinue pursuant to CPLR § 3217(b).
In furtherance of the above, not all actions can fit the bill of a "one size fits all" motto. Matrimonial matters are unique (L.F. v. M.F., 78 Misc 3d 810 [Supreme Court Nassau County 2023]; Marcillo v. Hennessy, 46 Misc 3d 1225(A) [Supreme Court New York County 2015]). The Court has a duty to act as parens patriae. (C.M. v. E.M., 82 Misc 3d 198 [Supreme Court Nassau County 2023]; G.P. v. S.S., 78 Misc 3d 1221(A)[Supreme Court Nassau County 2023]; T.H. v. G.M., 81 Misc 3d 1205(A)[Supreme Court Nassau County 2023]). Where custody and visitation are in issue, the court's role as parens patriae must not be usurped Clarence M. V. Martina M., 68 Misc 3d 457 [Supreme Court Kings County 2020]). While children of divorce are still children and the parents are still the parents, it is the court's role in parens patriae to protect the child. Clarence M., 68 Misc 3d at 469.
This Court is charged with protecting children that are the subject of litigation before it [*8]and making determinations of what is in the best interests of the child under the totality of the circumstances (Paige v. Paige, 202 AD3d 794 [2d Dept. 2022]). When the Court undertakes its role as parens patriae, it must put itself "...in the position of a wise, affectionate and careful parent..." (Finlay v. Finlay, 240 NY 429 [1925]).
The Court notes that while appointed by the Court, the AFC does not assert any judicial supervision of the child, she represents the child. The only body exercising judicial supervision over this child is the undersigned Justice. The Court finds that the existence of the Temporary Order of Protection, in and of itself, is a basis for the Court to decline to permit the discontinuance of this action at this time. The Temporary Order of Protection is in favor of only the child.[FN3]
The Temporary Order of Protection is a "general refrain" in favor of the child against the Plaintiff, and directs the Plaintiff to "...refrain from covering the subject child's throat, mouth, or nose that creates an unreasonable risk to the health, safety, or welfare..." of the subject child. The Court has yet to have a hearing on the underlying petition, so it has yet to determine whether a family offense has been committed. Without an adjudication on the merits of that petition, the Court declines, at this time, to permit the discontinuance of this action. The Court has also considered the fact that the Defendant herself, one day prior to the execution of the Agreement, filed an emergency application with the Court seeking to restore a prior order of the Rockland County Family Court requiring supervised access for the Plaintiff with the child. In that filing, she characterizes the Plaintiff's conduct as "reckless", represents that the child "screams and cries when she goes" to the Plaintiff, refuses to communicate with her about the child's health and mental issues, and characterizes the Plaintiff's conduct as "intentional or grossly negligent". She also claims that the Plaintiff has a "disregard for his child's safety" and that she left the Plaintiff after his "repeated threats" and "domestic violence". She also alleges that the Plaintiff obstructed the child's breathing.
Based upon those sworn allegations, it would be irresponsible and an abrogation of the Court's duty as parens patriae to permit the discontinuance of this action at this juncture. The Court is compelled to find that a discontinuance of this proceeding, while perhaps truly desired by the Plaintiff and Defendant, is not in the best interest of the child, or appropriate to insure the child's protection. Accordingly it is hereby:
ORDERED, that the stipulation of discontinuance, contained within the Arbitration Agreement, be and the same is hereby REJECTED and shall be of no force and effect.
AGREEMENT TO ARBITRATE CUSTODY AND ACCESSThe Agreement, at Paragraph "2", provides:
2. The parties agree to arbitrate certain disputes as provided in this Agreement as follows: All issues that could be raised and adjudicated in court, including pendente lite and temporary and permanent issues, so that matters in arbitration include but are not limited to custody (legal and physical), parenting time, child support and the allocation of child-related expenses, spousal support, division of assets and allocation of debt. These and all [*9]other matters between the parties arising out of their marriage and divorce shall be subject to the jurisdiction and determination by the Arbitrator pursuant to the terms and procedures of this Agreement. The Arbitrator shall determine whether an issue or dispute is within the scope of the Arbitrator's jurisdiction.(emphasis added).Disputes concerning child custody and visitation are not subject to arbitration, as the Court's role as parens patriae must not be usurped (Goldberg v. Goldberg, 124 AD3d 779 [2d Dept. 2015]; Weisz v. Weisz, 123 AD3d 917 [2d Dept. 2014]; Hirsch v. Hirsch, 4 AD3d 451 [2d Dept. 2004]; Matsui v. Matsui, 200 AD3d 774 [2d Dept. 2021]).
The parties executed the Agreement which contains the following provisions:
4. The Arbitrator may issue a temporary or partial decision or injunction.5. Judgment on the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof.

 * * *
10. The Arbitrator shall retain jurisdiction over this matter after publishing its award, and shall be authorized to modify the award for any reason they deem proper.

 * * *
19. In any arbitration proceeding involving custody or parenting time issues, the parties shall have a record made of the arbitration proceeding as to those issues. Such record shall include: (i) a record of all documentary evidence; and (ii) all testimony shall be recorded verbatim. A record of testimony may be made by one of the following: (i) certified shorthand reporter; (ii) electronic recording; or (iii) audio or video recording. The recording of the proceeding by any of the means listed above shall be at the cost of the parties and absent agreement of the parties, the Arbitrator shall decide the proper allocation of the costs of the record.

 * * *
25. In any proceeding involving custody, parenting time or child support issues, parties shall require the Arbitrator to make findings of fact and conclusions of law with respect to child-custody, parenting-time, or child support issues. As to those issues, the Arbitrator shall state in writing or otherwise record findings of fact and conclusions of law with a focus on the best-interests standard...Here, a review of the Agreement, both in toto and the salient paragraphs above clearly indicate to the Court that the parties contracted to provide the Arbitrator with the authority to determine issues concerning custody and parental access inasmuch as those issues are squarely in dispute in this case and inasmuch as the Agreement provides that the parties agreed to arbitrate the issues of custody and parenting time (see Agreement, Paragraph "2"). While parties to a contract are basically free to make whatever agreement they wish, even if the agreement appears to be unwise to a third party, they may not do so in the presence of a violation of law or transgression of a strong public policy. Rowe v. Great Atlantic & Pacific Tea Co., 46 NY2d 62 (1978). The Court finds that delegating the decision on the issues of custody and visitation to an [*10]Arbitrator violates public policy inasmuch as it infringes upon the Court's role as parens patriae.[FN4]
Therefore, it is hereby:
ORDERED, that so much of the Agreement which purports to delegate to an Arbitrator decision-making over the issues of custody and visitation be and the same are hereby deemed NULL and VOID.
Any other relief requested not specifically addressed herewith is hereby DENIED.
This constitutes the Decision and Order of this Court.
Dated: March 3, 2026Mineola, New York

Footnotes

Footnote 1:The Temporary Order of Protection remains in effect and on February 5, 2026, was extended through and included August 4, 2026.

Footnote 2:On Motion Sequence No.: 035.

Footnote 3:Had the Temporary Order of Protection been, for instance, in favor of only one of the parties against the other, and had there been no children of this marriage, the Court may have reached a different result. 

Footnote 4:While not necessarily before the Court on these submissions, the Court also finds problematic the provision of Paragraph "2" of the Agreement which provides that the parties are to arbitrate "...[a]ll issues that could be raised and adjudicated in court..." The phrase "all issues" certainly includes the adjudication on the temporary order of protection and whether or not a family offense has been committed. The Court finds that this provision, to the extent it purports to be an agreement to adjudicate the temporary order of protection, is invalid as a transgression of public policy. The Court does not finds that whether or not a family offense has been committed and whether or not a temporary or final order of protection should be issues is a dispute subject to arbitration.